JULIETTE M. BOURGEOIS & another, trustees,
*vs.* JOHN J. HURLEY, executor.

Suffolk.    April 10, 1979. — August 8, 1979.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Trust,* What constitutes, Creation, Construction, Segregation of trust
    assets. *Evidence,* Extrinsic affecting writing.

Where the settlor of a trust appended to the trust instrument a
    schedule listing certain securities to which the declaration of trust
    made no reference and the schedule was initialed on each page and
    signed on the final page by the settlor and where, after execution
    of the trust documents, the settlor and his wife, as trustees, *segre-*
    gated those securities listed on the schedule from other properties,
    deposited dividends and interest checks from the listed securities in
    a separate checking account in their names as trustees, and filed
    fiduciary income tax returns reporting those dividends and interest
    payments, an inference was warranted that the settlor intended to
    place in the trust the securities listed in the schedule [215-218]; and
    the declaration of trust and appended schedule, read together, con-
    stituted a sufficient expression of the settlor's intention to trans-
    fer the securities to the trust [218-219].

CIVIL ACTION commenced in the Supreme Judicial
Court for the county of Suffolk on July 25, 1978.

Upon transfer to the Appeals Court, the case was re-
ported by *Armstrong,* J.

*Hanson S. Reynolds (Sandra Shapiro* with him) for the
plaintiffs.

*William N. Hurley* for the defendant.

ARMSTRONG, J. This action, originally entered in the
Supreme Judicial Court, was transferred to this court
pursuant to G. L. c. 211, § 4A, and was thereafter reserved
and reported by a single justice of this court. The case is
before us on the pleadings and a stipulation that the facts
stated in the complaint are true and that the case is to be

decided on the basis of the facts so stated without the introduction of evidence. Since the stipulation does not provide otherwise, we may and do draw inferences from the facts stated. *New Eng. Foundation Co.* v. *American Mut. Liab. Ins. Co.*, 358 Mass. 157, 158-159 (1970).

The plaintiffs are the trustees[1] of an inter vivos trust established by Homer W. Bourgeois on September 17, 1975. He died on September 3, 1977. By this action the trustees seek a determination that certain securities, which are presently in the possession of the defendant, the executor of Bourgeois's estate, are assets of the trust. The executor maintains that they are assets of the estate.

The securities at issue are listed in a typewritten document entitled "Schedule A," which "is [the stipulation uses the present tense] [a]ppended to the [t]rust instrument" and is dated, like the declaration of trust, September 17, 1975. Schedule A was initialed on each page and signed on the final page by Homer W. Bourgeois (hereinafter the settlor). The declaration of trust does not make reference to schedule A. It refers to the property which is to constitute the trust corpus only by stating that the settlor "is about to transfer and deliver certain of his property to himself ... and his wife ... as [t]rustees." Schedule A is a list of securities,[2] without explanation; it makes no reference to the trust declaration. On the same day that the declaration of trust and schedule A were signed, the settlor executed a will which made reference to the trust and designated the trustees as beneficiaries of the residue of the estate, which was to be added to the

[1] The other trustee-plaintiff is Union National Bank of Lowell. The declaration of trust named the settlor and his wife, the plaintiff Juliette M. Bourgeois, as the original trustees and provided that upon the death of the settlor the bank should become cotrustee with Juliette. On Juliette's death the bank will become sole trustee.

[2] In addition to shares of corporate stock, schedule A lists several notes payable to the settlor and several policies of insurance (apparently life insurance). It also lists a cashier's check for $50,000. None of these items appears to be involved in the present dispute.

trust corpus. After the execution of these documents the settlor and his wife "as [t]rustees, treated the securities contained in [s]chedule A as assets of the [t]rust." They segregated those securities from other properties of the settlor. They opened a separate checking account in their names as trustees and deposited in it a $50,000 cashier's check (see note 2, *supra*) listed in schedule A. They did the same with the dividends and interest checks, and they filed fiduciary income tax returns for the years between the creation of the trust and the settlor's death. The securities were found after the settlor's death still registered in his name as an individual, and we infer from the silence of the parties' stipulation that he had not endorsed the certificates for transfer or executed powers of attorney, either to the trustees or in blank.

On these facts the trustees ask us to draw an inference that it was the intention of the settlor to place in the trust established on September 17, 1975, the securities listed in schedule A and to rule that his actions had the legal effect of doing so.

The factual inference concerning the settlor's intent seems to us beyond reasonable dispute. The fact that schedule A was dated, signed, initialed on each page and was appended to the trust document at the time (as we infer) of execution of the trust document indicates rather clearly that schedule A was intended to be a document of definite legal effect. That it was appended to a document declaring a trust suggests that the settlor intended schedule A as a statement of the property placed in trust, and that suggestion is confirmed by the subsequent actions of the trustees in segregating the securities listed in schedule A from other properties of the settlor, in their deposits of dividends and interest payments received on account of those securities into the trust checking account, and in their filings of fiduciary income tax returns reporting those dividends and interest payments. A person's actions subsequent to executing a legal document which tend to show his understanding of the document's

legal effect may be considered in determining his inten-
tion at the time of execution. *Rizzo* v. *Cunningham*, 303
Mass. 16, 21 (1939). *Lembo* v. *Waters*, 1 Mass. App. Ct. 227,
233 (1973). We therefore determine, as an inference of
fact, that the settlor intended on September 17, 1975, to
place in trust the securities listed in schedule A and that
he believed for the remaining two years of his life that he
had actually done so.

It is not enough, of course, merely to ascertain the
settlor's actual intent. The trust document cannot be giv-
en the effect of carrying out the settlor's intent where its
words cannot reasonably be read in a manner that ex-
presses that intent. *Kerr & Elliott* v. *Green Mountain Fire
Ins. Co.*, 111 Vt. 502, 510-511 (1941). 17A C.J.S., Contracts
§ 296(1) (1963). The expression of intent may be ambigu-
ous or vague, but it must be ascertainable in the words of
the document. Otherwise the document is relegated to
the role of mere evidence of the author's intent, which
may be believed or disbelieved by the finder of fact, and
the way is laid open to the variation of legal documents
by parol. Evidence extrinsic to a document may be shown
"for the purpose of elucidating, but not of contradicting
or changing its terms." *Robert Indus., Inc.* v. *Spence*, 362
Mass. 751, 754 (1973), and authorities cited. The legal
effect to be given a document must be based on the words
of the document itself, *Putnam* v. *Putnam*, 366 Mass. 261,
266 (1974), and must place "no impossible strain on the
words used . . . ." *Antonellis* v. *Northgate Constr. Corp.*,
362 Mass. 847, 851 (1973).

Here, the executor argues that the declaration of trust
by unambiguous language required a further act of
"transfer and delivery" from the settlor to the trustees
before any property of the settlor should become subject
to the trust. The settlor could have accomplished such a
transfer and delivery by following the procedures speci-
fied by the several corporations involved for transfer of
title to the shares to the trustees on the corporate books
or at least by following the procedures for transfer of title

indicated in G. L. c. 106, §§ 8-301, 8-302 and 8-308 (gener-
ally, delivery of the certificates to the trustees, endorsed
either to the trustees or in blank, or, alternatively, ac-
companied by signed stock powers). Indeed, mere delivery
of the securities might have sufficed, see G. L. c. 106,
§ 8-307; but the acts of the settlor, the executor argues,
fell short of such a delivery.[3] It is obvious that delivery of
the list did not suffice if delivery of the securities them-
selves was legally required to effect a transfer. Compare
*Johnson* v. *Johnson*, 300 Mass. 24 (1938).

The executor's contention that the securities never
found their way into the trust corpus is plausible if one
looks solely to the declaration of trust as the document
expressing the settlor's intention. By itself it appears
unambiguous and complete; so viewed, it appears to iden-
tify the trust corpus as property to be transferred to the
trust by the settlor in the future. But we think that the
stipulated facts, and particularly our inference there-
from that the settlor executed the declaration of trust
and schedule A simultaneously and appended the
schedule to the declaration, indicate an intention on the
part of the settlor that the declaration of trust was not to
be read as a complete statement of his intention; rather,
the declaration of trust and the schedule were to be read
together as constituting a single document. (That conclu-
sion is implicit in the facts, noted above, that schedule A
was intended to have legal effect, that it is silent as to
what legal effect was intended, but that it was appended
to a document which alone can supply the missing state-

---

[3] There is an ambiguous sentence in the stipulation which may be
read as stating that the settlor delivered the securities listed in
schedule A to the trustees. We have not relied on that reading, largely
because of uncertainty as to how it fits with a subsequent sentence
stating that the settlor and his wife "segregated" the securities listed
in schedule A from other property of the settlor. The case has been
complicated, we suspect needlessly so, by a number of unfortunate
ambiguities in the agreed facts which, like the ambiguity in the trust
instrument itself, have not been squarely confronted in the two briefs
submitted by the plaintiffs.

ment of legal effect.) There is ample precedent for reading two or more documents together as constituting a single declaration of trust, even in cases where the settlor's intention in that regard has not been expressed so clearly as by attaching the documents or by cross-referencing them. See, e.g., *Kendrick* v. *Ray*, 173 Mass. 305 (1899); *Stern* v. *Stern*, 330 Mass. 312, 317 (1953), and cases cited.

Reading the two papers together as a single, complete legal document, we find that the settlor's intention as determined above is sufficiently expressed therein. The document may be read as a declaration that the securities listed in schedule A, theretofore the property of the settlor as an individual, are henceforth the property of the named trustees for the uses set out in the trust declaration. A contrary reading would deprive schedule A of any legal effect whatever, contrary to what the settlor's later actions indicated was his actual intention. It seems well settled that one may create a trust in securities standing in one's name by a simple declaration to that effect, without the necessity of any further act of transfer or delivery.[4] *Rock* v. *Rock*, 309 Mass. 44, 47 (1941). *Barnette* v. *McNulty*, 21 Ariz. App. 127, 129 (1973). *Locke* v. *Farmers' Loan & Trust Co.*, 140 N.Y. 135, 141-142 (1893). Bogert, Trusts and Trustees § 142(b), at 18-19 (2d ed. rev. 1979). Restatement (Second) of Trusts § 17(a), & Comment (a), Illustration 1 (1959). Scott, Trusts § 32.5, at 276-277 (3d ed. 1967). Schedule A, by this reading, is the identification of the properties which are to be subject to the trust; and the reference in the trust declaration to "certain of

---

[4] We do not read *Johnson* v. *Johnson*, 300 Mass. 24 (1938), as holding the contrary. That case seems to have turned on the fact that the settlor had declared in trust certificates representing shares of corporate stock which were not then in his possession and control, thus implicitly requiring a subsequent act of transfer to the trustees which never materialized. The legal effect of his assignment of shares to himself and another trustee, as trustees, unaccompanied by the certificates, was that of an incomplete gift, unenforceable as a promise. See G. L. c. 155, § 36, as then in effect. See now G. L. c. 106, §§ 8-307, 8-309.

[the settlor's] property" which the settlor "is about to transfer and deliver . . . to himself . . . and his wife . . . as [t]rustees," becomes, by this reading, not the identification of the trust property but only a statement of the settlor's intention to do an additional act of transferring and delivering the named securities to the trustees.

The precise nature of the additional act contemplated — whether a formal transfer of title on the corporate books or simply a delivery of the securities — is not determinative of the case. If a formal transfer on the corporate books was contemplated, it is clear from the settlor's and trustees' subsequent acts that they did not regard such a transfer as a condition precedent to the securities' becoming subject to the trust. If a simple delivery was contemplated, the settlor and his wife may well have thought that it was accomplished by their segregation of the securities. There is authority for treating as delivered securities which the settlor himself treated as having been delivered. See *Sullivan* v. *Hudgins*, 303 Mass. 442, 447 (1939), and cases cited; *Thaxter* v. *Traiser*, 305 Mass. 341, 344 (1940). The executor's unexplained possession of the securities at the present time may tend to raise a question concerning the segregation or delivery but is not entitled to conclusive weight. See *Bone* v. *Holmes*, 195 Mass. 495, 505 (1907).

A judgment is to enter declaring that the securities listed in schedule A and any dividends and interest paid thereon are the property of the plaintiffs as trustees of the Homer W. Bourgeois Trust of September 17, 1975. Counsel fees are to be in the discretion of the single justice.

*So ordered.*