ANITA M. PAPALE-KEEFE *vs.* NICHOLAS ALTOMARE,
individually & as trustee.[1]

No. 94-P-175.

Worcester. January 17, 1995. - March 29, 1995.

Present: ARMSTRONG, KASS, & GILLERMAN, JJ.

*Trust*, Creation, Assets of trust, Business trust, Termination, Distribution, Settlor, Attorney's fees. *Business Trust*.

A certain trust was never funded where the grantor, who signed an inter vivos instrument purporting to transfer property to the trust, failed to make an effective delivery of the property to the trustee; consequently the grantor's second codicil bequeathing that property to his wife was effective. [311-314]

The holder of all the outstanding certificates of shares of a Massachusetts business trust was entitled to terminate the trust prior to its scheduled date of termination without the power to do so being reserved in the trust instrument and against the objection of the sole trustee, under trust principles applicable to such business trusts and under the law of corporations. [314-316]

A trustee was entitled to reimbursement from the trust funds, pursuant to the provisions of the trust declaration, for attorney's fees incurred in connection with legal proceedings involving the trust, where the trustee had engaged in no wilful breach of trust. [316]

CIVIL ACTION commenced in the Superior Court Department on July 13, 1988.

The case was heard by *John P. Forte*, J., sitting under statutory authority.

*Thomas V. Urmy, Jr.*, for the plaintiff.

*Michael P. Angelini* for the defendant.

GILLERMAN, J. After a jury-waived trial, the judge concluded that the plaintiff's claim to a beneficial interest in a Massachusetts business trust bequeathed to her under her husband's will was defeated by her husband's earlier transfer

---

[1]Of the Papale Realty Trust and of the Nicholas A. Papale Trust.

of that interest to an inter vivos trust. Other related claims of the plaintiff were also denied. For the reasons discussed below, we reverse the judgment.

The material facts, either found by the judge or undisputed, are these. On January 1, 1972, Nicholas Papale (Papale) and his mother Teresa Papale (Teresa) established the Papale Realty Trust (the Realty Trust) to which they transferred various parcels of improved and unimproved real estate. The trust instrument was prepared by Nunziato Fusaro, the dominant figure in the law firm Fusaro & Fusaro. The beneficiaries of the Realty Trust were Teresa and Papale in equal shares[2]; unless sooner terminated,[3] the survivor became the sole beneficiary. Papale and Teresa were the original trustees. The defendant, Nicholas Altomare, was the nephew of Nunziato Fusaro and was named successor trustee of the first to die of the original trustees. Altomare was employed by Fusaro & Fusaro until the early 1980's when that firm dissolved. The controversy surrounds the events that took place on May 16, and May 18, 1977:

(i) The Realty Trust was amended. The text of the amendment is sparse; it consists only of one paragraph which provides that the beneficial interest in the trust res shall be divided into 100 transferable shares, distributed equally between Papale and Teresa. We accept the assertion of both parties that the effect of the amendment was to convert the Realty Trust into a Massachusetts business trust. See G. L. c. 182, § 1. The amendment did not contain any provision altering any other provision of the Realty Trust.

---

[2]The "schedule of beneficial interests" attached to the trust instrument merely recited that Teresa and Papale each owned "fifty per cent . . . of the trust fund," with the survivor to own 100 per cent. Paragraph 23 of the trust provided that at the expiration of the trust, the trust res "shall be distributed in accordance with the Schedule of Beneficiaries . . . ." Paragraph 18 of the trust provided that the principal "shall always be preserved" and the income shall be used to pay all the expenses of the trust. There were no provisions for the distribution of principal or income to any beneficiary.

[3]The trust was to expire twenty years after the death of the last to survive of the descendants of Papale who were in being on the date of the trust, January 1, 1972. The expiration date has not yet arrived.

(ii) Papale executed a will making his wife, the plaintiff, executrix and sole beneficiary.

(iii) Altomare signed a declaration of trust, to be known as the Nicholas A. Papale Trust (the Papale Trust), under the terms of which Altomare agreed, as trustee, to hold in trust all real and personal property to be transferred to him by Papale. An attached "Schedule of Beneficial Interests" was signed by both Papale and Altomare. That schedule made no provision for any beneficiary during the lifetime of Papale. After Papale's death, and not before, the trustee was authorized to make discretionary distributions of income to the plaintiff and to make discretionary distributions of income and principal to unidentified charitable institutions. There was no provision for the disposition of the remainder interest.[4]

(iv) On May 18, 1977, Papale signed an endorsement to his fifty-share certificate in the Realty Trust, dated May 16, 1977, transferring the certificate to the Papale Trust. This certificate, bearing the signed endorsement, was not discovered until 1988 when, during the course of discovery proceedings in this case, it appeared in the files of Lawrence Leone, an accountant.

The judge found that Altomare, the trustee, "was not notified of this funding of the Papale Trust. However, the certificate with the witnessed transfer was *delivered* to Lawrence Leone, the accountant for the Realty Trust." (Emphasis supplied.) The judge also found that "[i]n fact, on February 14, 1981, Altomare wrote a note [that] 'this trust never funded and can be closed. N.A.' " Altomare did not learn of the endorsement on Papale's fifty-share certificate until his deposition in this case.

---

[4]On the same day Papale also instructed Altomare in writing that, if his daughter Naomi "mends her ways," Altomare was to make suitable provision for her support out of income and, if appropriate, principal. Neither party brings to our attention anything in the record regarding the activation of these instructions during Papale's lifetime or thereafter.

On January 4, 1979, Altomare prepared and Papale signed a second codicil to his will.[5] The codicil bequeathed Papale's fifty shares in the Realty Trust to his wife, the plaintiff. The codicil made no mention of the 1977 endorsement of Papale's fifty-share Realty Trust certificate. The judge found that Altomare did not consult with Fusaro (who had witnessed the endorsement of the fifty-share certificate) regarding the preparation of the second codicil. The judge also found that one week after Papale's death on April 24, 1979, Fusaro told the plaintiff that Papale's fifty shares in the Realty Trust "had earlier been assigned by Papale to the Papale Trust."

After lengthy discussions during 1984, Teresa decided to withdraw from the Realty Trust, and on January 23, 1985, she signed a stock redemption agreement. The agreement was contingent upon the sale of certain properties. It was signed by Altomare as trustee (Altomare had succeeded the deceased Papale), and by Teresa individually and as trustee. The plaintiff assented to the agreement. Within several months, the contingency was fulfilled, and all of Teresa's shares in the Realty Trust were redeemed by the trust, leaving the fifty-share certificate originally issued to Papale the only shares outstanding.

On February 7, 1986, Altomare, who became the sole trustee of the Realty Trust following the death of Teresa, exercised the power of the trustee to amend the trust by adding a provision that upon his death or resignation, his son, age twenty-six, was to become his successor trustee of the Realty Trust.

On these facts, the judge concluded that the "Papale Trust was funded when Papale transferred his fifty (50) shares of the Realty Trust to the Papale Trust. Even though the Papale Trust trustee was unaware of the funding, the assignment was delivered to the Realty Trust accountant."

We conclude that the judge was in error. The judge made no findings that explain the appearance of the fifty-share cer-

---

[5]Papale had executed a codicil to his will on October 6, 1977, stating that if the plaintiff did not survive Papale, or died within sixty days of his death, the sole beneficiary of his estate was to be the Papale Trust.

tificate in the files of Leone, and neither party offers any explanation. There is only the fact of *where* the certificate was found, leaving that fact insolubly ambiguous.[6] Leone's testimony was precise and to the point: he did not recall ever receiving the certificate; Papale never told him that he, Papale, was assigning his shares in the Realty Trust to the Papale Trust; Papale never mentioned the Papale Trust to Leone; and Papale never gave any instructions to Leone regarding Papale's shares in the Realty Trust.

This is not a case where the settlor declares himself trustee of the res, for in such a case there is no doubt that delivery is not essential. See *Rock* v. *Rock*, 309 Mass. 44, 47 (1941). *Bourgeois* v. *Hurley*, 8 Mass. App. Ct. 213 (1979), relied upon by the defendant, involved a declaration of trust by the settlor. See *id.* at 214. Here, it was Altomare, not Papale, who declared himself trustee of the Papale Trust, and it is firmly established in this Commonwealth and elsewhere that, absent delivery, a gift in trust fails. See *Silbert* v. *Equitable Life Assur. Soc. of the U.S.*, 314 Mass. 406, 408 (1943), and cases cited. "The policy . . . that requires delivery of the subject matter or delivery of an instrument of transfer, is equally applicable whether the donor intends to make an absolute gift or a gift in trust. Accordingly it has been held in a number of cases that an intended gift in trust failed because the transfer of the property was incomplete." Scott, Trusts § 32.2, at 355 (4th ed. 1987), and cases cited.

The result is no different if we assume that Leone came into possession of the certificate because Papale delivered it to him. In *Silbert* v. *Equitable Life Assur. Soc. of the U.S.*, 314 Mass. at 406-408, the plaintiff, Coleman Silbert, executed an irrevocable indenture of trust naming his brother Myron as trustee. Under the terms of the trust, Silbert assigned the proceeds of an accident and health policy to his brother, and he wrote the insurer, enclosing the trust, and

---

[6]Arguably, Papale's execution of the second codicil to his will, bequeathing the fifty-share certificate to the plaintiff, resolves the ambiguity favorably to the plaintiff. But there are no findings on the point, and we have attached no special weight to the argument.

requesting a change in the beneficiary to his brother as trustee under the indenture. The plaintiff said nothing to his brother, and he retained possession of the policy. About a year later, the plaintiff sought to change the beneficiary to his wife and children, but the insurer and Myron (now aware of what had happened) claimed that there had been an absolute assignment of the policy to Myron as trustee, and since the trust was irrevocable, the plaintiff had no further right to change the beneficiary.

The court held that the plaintiff was entitled to change the beneficiary. *Id.* at 408-410. Where an attempt is made to create a trust by an assignment of the res by the settlor to the trustee, wrote then Justice Qua, the transfer of the res "must conform to the legal requirements for similar transfers not in trust." *Id.* at 408. In *Silbert*, the settlor had not delivered either the policy or the trust indenture to Myron, and the trust indenture therefore never took effect. *Id.* at 408-409.

Justice Qua explained that the Massachusetts decisions place emphasis on whether the grantor or assignor relinquishes control over the instrument so that the transfer is "a finality" and whether there has been acquisition of control over the instrument by the grantee or assignee. *Id.* at 408. Thus, where there is delivery to a third person, there is a good delivery only if the grantor "then makes manifest to the third person his intention that the third person shall hold the instrument on the grantee's or promisee's behalf and the third person accepts it on these terms." *Id.* at 408-409.

There is no finding by the judge in this case and no suggestion in the record that indicates that Papale designated Leone to hold the fifty shares of the Realty Trust for Altomare as trustee of the Papale Trust or that Leone accepted the delivery of the certificate on those terms. Indeed, Leone, as we have seen, denied all knowledge of the certificate, and he denied receiving any instructions from Papale regarding the certificate. In fact, it appears that Leone did not know that the certificate was in his file until it was discovered sometime in 1988. Altomare himself wrote a note dated Feb-

ruary 14, 1981, that "this trust never funded and can be closed." Further, on March 19, 1984, Altomare issued a fifty-share certificate in the Realty Trust to the plaintiff to replace the certificate originally issued to Papale.

We conclude that while Papale signed an inter vivos instrument purporting to transfer his interest in Realty Trust, the judge was clearly in error in finding that an effective delivery had been made to Altomare by delivery to Leone; failing an effective delivery, the transfer fails.[7] Thus Papale's second codicil bequeathing his fifty-share certificate to the plaintiff is effective, as is Altomare's issuance of a fifty-share certificate to the plaintiff on March 19, 1984.

We consider, next, the plaintiff's prayer for relief that the Realty Trust be terminated and its assets transferred to the plaintiff as sole beneficiary.[8] The question is whether the holder of all the outstanding shares of a Massachusetts business trust may terminate the trust prior to its scheduled date of termination without the power to do so being reserved in the trust instrument and against the objection of the sole trustee.

No doubt the settlor of a trust, together with the holders of all the beneficial interests, have the power to terminate the trust even in the absence of an express power to do so. *Commissioner of Corps. & Taxn.* v. *Second Natl. Bank*, 308 Mass. 1, 11 (1941). All the holders of the beneficial interests, without the settlor, may terminate the trust if it appears that the settlor's purpose for creating the trust has been fulfilled. *West* v. *Third Natl. Bank*, 11 Mass. App. Ct. 577, 579-581 (1981). These traditional trust principles are generally applicable to Massachusetts business trusts. See *State St. Trust*

---

[7]Altomare argues that the plaintiff, as beneficiary, was informed of the transfer "no later than May, 1979." Presumably this refers to *Fusaro's* disclosure to the plaintiff, after Papale died, that the fifty-share certificate in the Realty Trust had been "assigned" to the Papale Trust. Given the unexplained appearance of the certificate in Leone's file, the statement of Fusaro (as found by the judge), which on its face refers only to the endorsement of the certificate, has no probative value regarding *Papale's* actions or final intentions during his lifetime.

[8]The judge did not reach this issue. We decide the question as matter of law on the record before us.

*Co.* v. *Hall*, 311 Mass. 299, 306 (1942) (the terms of the declaration of trust "fully defined the interest of the shareholders in the property of the trust").

In this case, unlike *West*, there never was any intention to provide assured and continuous support for a beneficiary during the life of the trust because, as noted earlier, there were to be no distributions of either principal or income. See note 2, *supra.* To the extent the trust may have been intended for the specific benefit of Teresa, that purpose was fulfilled when all her shares were redeemed at her request. If, or to the extent that, the trust may have been intended for the benefit of Papale, that purpose, too, was fulfilled upon Papale's death. Nor can it be said that Papale intended the trust to provide continuous support for his wife, for he failed to arrange for an amendment to the trust that would permit distributions of principal and income to her prior to the expiration of the trust.

Given Altomare's understanding that, as trustee, he had the power to redeem the shares of a beneficiary (Altomare and Teresa, as trustees, redeemed all of Teresa's shares), Altomare has acknowledged the right of a beneficiary to terminate his or her interest in the trust absent some overriding reason not to do so. Altomare advances no good reason not to do so, and we perceive none.[9] Having redeemed Teresa's shares, Altomare could not, consistently with his obligations as trustee, refuse to redeem the plaintiff's shares. See *Fogelin* v. *Nordblom*, 402 Mass. 218, 222 (1988) ("It is axiomatic that the . . . trustees stood in a fiduciary relationship to all of the beneficiaries of the trust and, therefore, had a duty not to favor one class of shareholders over another"). Continuing a trust solely for the purpose of continuing the compensation of the trustee is improper.[10] *Slater* v. *Hurlbut*, 146 Mass.

---

[9]Altomare argues that the spendthrift clause in the trust precludes the redemption of the plaintiff's shares. That clause, however, was nullified when the trust converted the beneficial interests into transferable shares. Even more to the point is the fact that that clause did not prevent Altomare from signing a redemption agreement in favor of Teresa.

[10]The judge found that, although the declaration of trust allowed for the compensation of the trustee, Altomare took no fees as trustee of the Realty

308, 315 (1888). Whether the plaintiff is entitled to redeem her shares, or to terminate the trust, is, in this case a difference without a distinction.

If the point of reference is not only trust law but also the law of corporations, see *Richardson* v. *Clarke*, 372 Mass. 859, 861-862 (1977) ("Business trusts possess many of the attributes of corporations and for that reason cannot be governed solely by the rules which have evolved for traditional trusts"), the result is no different. See *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 600 (1975) (the rule of equal opportunity in stock purchases by close corporations requires equal access for all stockholders). Compare G. L. c. 156B, § 99(*a*) (a corporation may file a petition for dissolution if authorized by a majority stockholder vote; no vote of the directors is required).

Finally, we reject the plaintiff's request that we should disallow the judge's award of attorney's fees, payable out of funds of the Realty Trust, which were incurred by Altomare in connection with the legal proceedings involving the Realty Trust. The judge found that Altomare did not engage in any wilful breach of trust, and therefore he is entitled to be exonerated, as provided in paragraph six of the Realty Trust. There was no error.

Accordingly, paragraphs 1 and 2 of the judgment, declaring that the Papale Trust was funded by the transfer of fifty shares of the Realty Trust and that fifty shares of the Realty Trust are owned by the Papale Trust, and paragraph 5 of the judgment are reversed. Paragraph 12, ordering payment of attorney's fees to the trustee, is affirmed. A new judgment is to enter which (1) declares that the plaintiff is the owner of all the outstanding shares of the Realty Trust and has the power to terminate the trust; (2) incorporates paragraphs 4, 6, 7, 8, 9, and 12 of the judgment appealed from; and (3)

---

Trust. However, Altomare's firm received "referral fees" from the Realty Trust concerning the trust's sale of certain property through a real estate brokerage, and the court ordered the firm to reimburse the trust for these fees as well as various double billings for legal services.

orders the termination of the Realty Trust and the distribu-
tion of all its records and remaining assets to the plaintiff.

*So ordered.*