NANCY KIRSCHBAUM, individually & as administratrix,[1] vs.
RICHARD W. WENNETT, coexecutor,[2] & others.[3]

No. 02-P-1090.

Middlesex. November 17, 2003. - April 14, 2004.

Present: LAURENCE, MILLS, & TRAINOR, JJ.

*Trust*, Amendment and modification.

The judge in a civil action arising out of the amendment of a trust properly
granted summary judgment in favor of the defendants (the attorney who
created the trust and the trustees), where the settlor's handing the trust
amendment to the attorney for notarization and then his acquiescence in
the attorney's suggestion, also contemporaneously assented to by the
trustees, who had not actually received or touched the amended instrument,
to place the document in the attorney's vault satisfied the trust's require-
ment that any amendment be deposited with the trustees [809-813];
moreover, this court concluded that the plaintiff's contention that the judge
erred in equating the terms "deposit" and "delivery" was not supported by
reasoned argument and was inconsistent both with longstanding Mas-
sachusetts precedent and with the trust instrument itself [813], and that
persuasive authorities [813-814] and established principles [814-815] sup-
ported the result; finally, this court considered without merit the plaintiff's
contentions that a trustee could not authorize a variance from strict compli-
ance with the method of amendment provided in the trust instrument [815]
and that the judge erred in denying her motion to amend her complaint a
second time [815-816].

CIVIL ACTION commenced in the Superior Court Department on
March 30, 2001.

The case was heard by *Christine M. McEvoy*, J., on motions
for summary judgment, and final judgment was entered by
*Stephen E. Neel*, J.

---

[1]With the will annexed of the estate of Eleanor Broomfield.

[2]Of the estate of Benjamin M. Broomfield.

[3]Evelyn Ferngold, as coexecutor of the estate of Benjamin M. Broomfield
and trustee of the Benjamin M. Broomfield Family Trust; and Charles Press,
as trustee of the Benjamin M. Broomfield Family Trust.

*Michael H. Riley* for the plaintiff.

*Floyd H. Anderson* for the defendants.

LAURENCE, J. The principal question before us is whether a Superior Court judge correctly allowed summary judgment against the plaintiff, Nancy Kirschbaum, when she ruled that the settlor had effectively amended his revocable trust — which granted the settlor the power to modify its terms at any time during his lifetime "by a written instrument . . . deposited with the Trustees" — so as to eliminate Kirschbaum as a beneficiary. Kirschbaum contends that the settlor failed to comply with the trust terms when, in his lawyer's office and in the presence of the two trustees, he executed the amendment but did not then physically deposit it with the trustees. Instead, he handed the executed amendment to his lawyer for notarization and then acquiesced in his lawyer's suggestion — also contemporaneously assented to by the trustees, who did not actually receive or touch the instrument — that the lawyer immediately place the document in the law firm's vault, where the settlor's will and the original trust document had previously been stored for convenience and safekeeping.

*Basic facts.* The judge acted on the following undisputed material facts. The settlor, Benjamin M. Broomfield (Benjamin), created a revocable and amendable trust in (for all relevant purposes) October, 1994, with the legal assistance of his attorney, the defendant Richard W. Wennett. The instrument provided that, upon the death of the survivor of the settlor and his wife, Eleanor, the trust assets were to be divided in equal shares among Nancy Kirschbaum (Eleanor's daughter by a prior marriage), Helen Adams (one of Benjamin's two nieces), the defendant Evelyn Ferngold (Benjamin's other niece), and the defendant Charles Press (Benjamin's nephew). The trust document named Ferngold and Press as trustees.

Eleanor died on January 22, 2000. On March 2, 2000, Benjamin, again with Wennett's assistance, amended his trust (as well as the companion will) to eliminate any beneficial interest for Kirschbaum. The amendment (as well as a codicil to the will) was executed and notarized in Wennett's law office, in the presence of Wennett, Ferngold, and Press, as well as the requisite number of disinterested witnesses. Benjamin clearly

stated to those assembled that his intention in amending his estate documents was to ensure that Kirschbaum received nothing, because she had not helped her mother, Eleanor, during her final illness and had not attended Eleanor's funeral. His amended trust distributed the trust property in equal shares to Ferngold, Press, and Adams. Benjamin died on April 1, 2000, having made no further changes to the trust. One year later, Kirschbaum filed the underlying action seeking a declaration that the March 2, 2000, amendment was invalid. As noted, the dismissal of that action on the defendants' summary judgment motion is the source of this appeal.

*Discussion.* In 1921, Justice Benjamin N. Cardozo of the New York Court of Appeals noted that, "Of the cases that come before [my] court . . . a majority . . . could not, with semblance of reason, be decided in any way but one." Cardozo, The Nature of the Judicial Process 164 (1921). By 1924 he had refined his estimate to opine that "Nine-tenths, perhaps more, of the cases that come before . . . [an appellate] court are predetermined . . . in the sense that they are predestined — their fate preestablished . . . ." Cardozo, The Growth of the Law 60 (1924). The soundness of his observations can be seen in the work of this court, where, year in and year out, eighty percent or more of all appeals are affirmed in their entirety. This phenomenon reflects the acumen and excellence of the work of our trial courts, whose consistently outstanding performance is, regrettably, too rarely acknowledged in an explicit manner in the pages of our reports.

The ruling under review is the product of such a characteristically comprehensive, well-reasoned decision; and, having carefully reviewed the record and the parties' briefs, we can affirm the judgment for substantially the reasons set forth by the motion judge in her March 1, 2002, memorandum of decision.[4] We

---

[4]Kirschbaum's first amended complaint had alternatively alleged the breach of a supposed 1994 oral contract between Benjamin and Eleanor to make Kirschbaum irrevocably a twenty-five percent beneficiary of Benjamin's trust in consideration of Eleanor's transferring her one-half interest in the family house to Benjamin in 1994, and a count in quantum meruit based on the same allegations. Because we conclude that the judge also correctly granted summary judgment for the defendants on these counts — on the bases that there

are in particular agreement with the following analysis by the judge:

> "Benjamin, as settlor of the revocable Trust, is expressly granted the right to amend the instrument. Paragraph 22 of the 1994 . . . trust states in pertinent part: '[t]he Donor reserves to himself during his lifetime the power by written instrument or written instruments *deposited with the Trustees* at any time or from time to time, prior to the donor's death . . . to vary or modify the terms of this trust.' . . .

> " 'Where a trust instrument explicitly provides for a power and method of modification, that power "must be exercised in strict conformity to its terms." ' *Fogelin* v. *Nordblom*, 402 Mass. 218, 223 (1988), quoting *Phelps* v. *State Street Trust Co*[.], 330 Mass. 511, 512 (1953); *Leahy* v. *Old Colony Trust Co.*, 326 Mass. 49, 52 (1950). Strict conformity in this case involves depositing the amendment with the trustee. The validity of the March 2000 Trust amendment, and therefrom the interest of Kirschbaum as a beneficiary, thus depends upon whether delivery of the amendment occurred between Benjamin and the Trustees at the meeting with Wennett on March 2, 2000.

> "First, the term 'deposit' under the trust connotes delivery of the written instrument to the trustee. *Crain* v. *Paine*, [4 Cush.] 483, 486 (1849). Physical delivery however is not required for a deposit to be effective. . . . The S[upreme] J[udicial] C[ourt] has held that a transfer between a settlor and trustee of a trust document is valid if it conforms to the legal requirements for similar transfers not in trust. *Silbert* v. *Equitable Life Assur. Soc. of [the] U.S.*, 314 Mass. 406, 408 (1943). For example, 'manual delivery of a recorded deed is not required to work a

---

was no evidence of any such oral agreement; that it would in any event be unenforceable under the Statute of Frauds, G. L. c. 259, §§ 5 and 5A; that the alleged contract contradicted the terms of the documents Benjamin and Eleanor had executed at the same time as well as the statements they had then made to the lawyer drafting the documents; and that Kirschbaum's evidence consisted only of her own uncorroborated, self-serving affidavit regarding ambiguous statements allegedly made to her by the now deceased Eleanor and Benjamin — we mention these subsidiary issues no further.

transfer, and . . . acts of the grantee when coupled with a purpose of the grantor to treat the deed as delivered are sufficient to pass the title.' *Sullivan* v. *Hudgins*, 303 Mass. 442, 447 (1939). Furthermore, '[i]t is not necessary, as between the parties themselves, even when both are present, that the deed should be placed in the actual custody of the grantee, or of his agent. It may remain with the grantor, and it will be good, if there are other acts and declarations sufficient to show an intention to treat it as delivered.' *Id.* at 447, quoting *Regan* v. *Howe*, 121 Mass. 424, 426 (1877).

"Secondly, delivery of the instrument requires a 'relinquishment of control over the instrument by the grantor or promisor with intent to make it a finality.' *Silbert* v. *Equitable Life Assur. Soc. of [the] U.S.*, 314 Mass. [at] 408 . . . . Here, Benjamin executed the Trust amendment, handed it to Wennett for notarization, at which time Wennett inquired as to placing the document into the firm's vault. The Trustees, who were both present, and Benjamin, the settlor, agreed to this arrangement. Thus, by handing over the document in the presence of both Trustees, with their assent to leaving the amendment with Wennett, Benjamin relinquished control. Further, Benjamin clearly stated that he wanted to amend his estate documents so that Kirschbaum, after not helping when Eleanor was sick and not coming to the funeral, would not receive anything. . . . His clear intention to amend his estate documents, combined with the presence of the Trustees, demonstrates his intent to make the amendment a finality.

"Thirdly, both parties contend that because the execution of amendment occurred through Wennett, delivery must be in accord with the established third-party delivery standard. *Silbert*, 314 Mass. at 409. See also *Papale-Keefe* v. *Altomare*, 38 Mass. App. Ct. 308, 308-[314] (1995). In *Silbert*, the settlor executed an irrevocable indenture of trust naming his brother as trustee, with his wife as beneficiary [of the settlor's insurance policies,] but then amended the document by changing the beneficiary to his brother. [314 Mass.] at 406-407. The settlor retained one copy of the amendment and sent the other to the assurance society with a letter requesting the change in beneficiary.

*Id.* [at 407]. However, the settlor never delivered the trust indenture directly to the trustee, nor did the trustee have any knowledge of the alteration. *Id.* at 408. The court opined that under these circumstances there is good delivery 'only if the grantor or promisor "then makes manifest to the third person his intention that the third person shall hold the instrument on the grantee's or promisee's behalf and the third person accepts it on these terms" [citation omitted].' *Id.* at 409; *Papale-Keefe*, 38 Mass. App. Ct. at [313]. Based upon that declaration the court concluded that there was 'an entire absence of evidence that the assurance society in receiving the assignment acted or purported to act in behalf of the trustee or of the beneficiaries of the trust.' *Silbert*, 314 Mass. at 409. *Papale-Keefe*, 38 Mass. App. Ct. at 309-310 (finding that the third party never accepted delivery for the trustee and that the trustee was never notified of the funding document).

"The case at bar conforms to the established third-party delivery standard. The actions of Benjamin and the Trustees lie in direct contrast to their counterparts in *Silbert* and *Papale-Keefe*, where the court held that delivery was not effective because the trustees lacked any involvement and had a complete lack of knowledge of the documents attempting to be delivered. Here, both Trustees were actually present when the amendment was executed. Furthermore, the Trustees were involved in the process and knew the reasoning and substance of the amendment. Thus, the agreement of Benjamin and both Trustees for Wennett, as a third person, to hold the amendment demonstrated the settlor's intention that the third person shall hold the instrument on the Trustees' behalf.

"Therefore, in this case where the settlor has a clear intent to amend the revocable Trust and the Trustees are present, involved in the execution of that document, and accept a third party holding the document, the amendment is deposited or delivered with the Trustees in conformity with the Trust provision. Hence, Defendants' motion for summary judgment as to Count I is *Allowed*, while [Kirschbaum's] cross motion for summary judgment is *Denied*."

In fine, the factual circumstances attending Benjamin's execution of the amendment in the presence of the trustees and his handing the document to his lawyer for safekeeping with the trustees' assent manifested his intent both to make the amendment an effective disposition and to exclude Kirschbaum from his bounty, in a manner consistent with the terms of his trust.

We add the following comments:

1. Kirschbaum's conclusory contention that the judge erred in equating the terms "deposit" and "delivery" not only is unsupported by reasoned argument and relevant authority, contrary to Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), but also is inconsistent with longstanding Massachusetts precedent, cited by the judge, holding that deposit connotes delivery, see, e.g., *Crain* v. *Paine*, 4 Cush. at 486 (dictum), and is inconsistent with the trust instrument itself, wherein the two terms are used indiscriminately and synonymously throughout.[5]

2. Persuasive authorities not mentioned by the parties confirm the result. See Bogert, Trusts and Trustees § 147, at 60, 63 (2d rev. ed. 1979) (delivery "in the best modern usage means the manifestation of an intention that the instrument in question shall have operative effect. It does not necessarily refer to possession of the instrument or to transfer of the document from hand to hand. . . . Placing a third person in possession of the instrument . . . may show the necessary intent that the instrument shall have immediate operative effect"); Restatement (Third) of Trusts § 63 comment i (2003) ("If the terms of the trust reserve to the settlor a power to revoke or amend the trust exclusively by a particular procedure, the settlor can exercise the power only *by substantial compliance* with the method prescribed. Thus, if a settlor reserves the power to revoke the

---

[5]The one case mentioned by Kirschbaum in connection with this contention, *Gloucester Mut. Fishing Ins. Co.,* v. *Hall,* 210 Mass. 332 (1911), contradicts her argument. It held that "depositing" with the post office a motion required by court rule to be "delivered" to opposing counsel constituted "delivery," a term that did "not necessarily import an actual physical tradition of possession from one hand to another." *Id.* at 334-335. See the essentially equivalent meaning for the two terms in The American Heritage College Dictionary of the English Language 368, 373 (3d ed. 1997) ("deliver . . . [t]o surrender [someone or something] to another; hand over"; "deposit . . . [t]o give over or entrust for safekeeping").

trust 'only by a notice in writing delivered to the trustee' . . . [i]t is sufficient delivery . . . if the notice is mailed to the trustee by the settlor even though it is not received by the trustee until after the settlor's death") (emphasis added); *id.* at § 63, Reporter's Notes to comments h & i; Unif. Trust Code § 602(c), 7C U.L.A. 82 (Master ed. Supp. 2002-2003) ("the settlor may revoke or amend a revocable trust . . . *by substantial compliance* with a method provided in the terms of the trust . . . or . . . *any other method manifesting clear and convincing evidence of the settlor's intent*") (emphasis added).

3. Further supportive of the judge's rulings are the well-established principles that a trustee may properly employ agents, including lawyers, and delegate the performance of ministerial acts and administrative details to them, and that such delegated acts are deemed to be the acts of the trustee. Under the decisions invoking those principles, the act of the trustees at issue here — authorizing an agent (Attorney Wennett)[6] to receive and safeguard on their behalf the settlor's executed documents — was the kind of delegation of nondiscretionary administrative or ministerial tasks that easily passes legal muster. See, e.g., *Turnbull* v. *Pomeroy*, 140 Mass. 117, 119 (1885) (Holmes, J.) (trustees may employ an agent to sell the output of a manufacturing business held in trust); *Zevitas* v. *Adams*, 276 Mass. 307, 314 (1931) (trustee may properly authorize an attorney to enter upon mortgaged trust property to effect a foreclosure); *Boston* v. *Curley*, 276 Mass. 549, 561-562 (1931) (trustees could properly direct an agent to withdraw the bulk of trust funds from one investment and reinvest them in a specifically designated

---

[6]Relying upon Restatement (Second) of Agency § 392 (1958), which requires an agent acting for two principals to disclose all material facts relevant to his dual representation to both parties, Kirschbaum argues that Wennett could not simultaneously act as agent for Benjamin and for the trustees because he failed to procure both parties' consent to his dual agency. Her argument is without merit on the facts. Explicit disclosure of any facts relevant to the parties in this case would have been redundant, as Benjamin and the trustees had all been participants in the execution of the amendment and all had acquiesced to Wennett's proposal to hold the documents, as they had to his custody of earlier versions of Benjamin's trust and will. Wennett possessed no additional facts that might have affected the judgment of either Benjamin or the trustees and, thus, further disclosure was unnecessary. Moreover, the Restatement expressly provides that no disclosure is necessary when the principals' actions manifest that they are aware of the relevant facts.

certificate of deposit); *Lewis* v. *Emerson*, 391 Mass. 517, 523 (1984) (trustees may properly delegate "the ministerial task of signing documents on behalf of the trust"). Cf. *Hutchins* v. *State Bank*, 12 Met. 421, 427 (1847) (Shaw, C.J.) (a fiduciary may properly give power of attorney to her lawyer to effect the transfer of stock as to which she has fiduciary responsibilities); *Fore River Shipbuilding Corp.* v. *Commonwealth*, 248 Mass. 137, 140 (1924), and *Medeiros* v. *Middlesex Ins. Co.*, 48 Mass. App. Ct. 51, 57 (1999) (for the principle "qui facit per alium, facit per se").

4. Kirschbaum's reliance on *Phelps* v. *State St. Trust Co.*, 330 Mass. 511 (1953), for the proposition that a trustee cannot authorize a variance from strict compliance with the method of amendment provided in the trust instrument, is bootless, since here there *was* effective "deposit" and consequent compliance with the trust. Moreover, *Phelps* is entirely distinguishable, because the trust there required that the written instrument be "acknowledged and delivered to the trustees," but the purported amendments as delivered to the trustees had not been acknowledged by the settlor. *Id.* at 512. The requirement of acknowledgment — i.e., a certificate by an empowered public officer, attached to a written instrument, stating that the maker of the instrument has sworn to the officer that he executed it as his own free act and deed — is no mere administrative detail but rather is a fundamental evidentiary matter, because it "furnishes formal proof of the authenticity of the execution of the instrument." *McOuatt* v. *McOuatt*, 320 Mass. 410, 413 (1946). Thus, in contrast to the situation here, in *Phelps* the lack of the required acknowledgment, in the absence of other evidence, precluded a finding that the settlor had freely and voluntarily executed the amendment.

5. Finally, Kirschbaum asserts that the judge erred in denying her motion to amend her complaint a second time[7] — after discovery had ended and the time for filing motions under the

---

[7]The "second amended complaint" sought to add a proposed "new" count for "alternative declaratory relief" based on the supposed discovery of new facts indicating the alleged invalidity of an earlier (1994) trust amendment upon which the March 2, 2000, amendment was based, an invalidity also founded on the claimed failure to have properly "deposited" that 1994 amendment with the trustees.

Superior Court rule 9A tracking order had expired, six weeks after the judge had entered summary judgment against her, and over a month after the judge had denied her motion for reconsideration. This assertion can be rejected for several reasons, among them (a) Kirschbaum's unjustified delay in advancing her new theory, even under the liberal amendment policy of *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288 (1977); (b) Kirschbaum's failure to have identified the denial of the motion to amend in her notice of appeal, see *Bateman* v. *Consolidated Rail Corp.*, 45 Mass. App. Ct. 916, 917-918 (1998); (c) Kirschbaum's failure to recognize the discretionary authority of the judge even with respect to proposed amendments under Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974), and her consequent failure to demonstrate any abuse of discretion on the judge's part in denying the belated motion, see *Consumers Sav. Bank* v. *Coven*, 8 Mass. App. Ct. 594, 598-599 (1979); (d) the reality that the documents and facts upon which the motion was based had been fully available to Kirschbaum months prior to her first, unopposed motion to amend her complaint five months after it was filed, see *Wiska* v. *St. Stanislaus Social Club, Inc.*, 7 Mass. App. Ct. 813, 819 (1979); (e) Kirschbaum's failure to cite a single authority relevant to the circumstances of this case that supports this assignment of error, contrary to the mandate of Mass.R.A.P. 16(a)(4); and (f) the manifest futility of the amendment, since it was in effect grounded on essentially the same "failure of deposit" argument that the judge had already correctly held wanting. See *Jessie* v. *Boynton*, 372 Mass. 293, 295 (1977); *United States Leasing Corp.* v. *Chicopee*, 402 Mass. 228, 233 (1988). Contrast *Foman* v. *Davis*, 371 U.S. 178, 182 (1962).

*Judgment affirmed.*