QUEST SYSTEMS, INC. *vs.* CHARLES M. ZEPP.

No. 89-P-47.

Middlesex. December 14, 1989. - April 13, 1990.

Present: WARNER, C.J., ARMSTRONG, & KAPLAN, JJ.

*Practice, Civil*, Dismissal, Judicial discretion, Attorney's fees.

Where the plaintiff in a civil action sought a voluntary dismissal under
  Mass.R.Civ.P. 41 (a) (2), the judge, in the circumstances, had no basis
  for ordering that the dismissal be "with prejudice." [495-497]
If a judge ruling on a plaintiff's motion under Mass.R.Civ.P. 41 (a) (2) for
  voluntary dismissal of a civil action imposed conditions which the plain-
  tiff found too onerous, the plaintiff, acting in a timely manner, would be
  entitled to decline the conditions and elect to proceed to trial. [497-498]
On remand of a civil action which had been dismissed without prejudice on
  the plaintiff's motion under Mass.R.Civ.P. 41 (a) (2), the judge was to
  reconsider the defendant's application for attorney's fees. [498]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 3, 1987.

The case was heard by *Joseph S. Mitchell, Jr.*, J., on a
motion to dismiss.

*Nancy E. Watters* for the plaintiff.
*John F. Batter, III*, for the defendant.

KAPLAN, J. The plaintiff, Quest Systems, Inc. (Quest),
moved during the preliminaries of the action, before trial, to
dismiss it without prejudice. A judge of the Superior Court
dismissed the action with prejudice. He denied any award of
counsel fees to the defendant Dr. Zepp. Quest appeals, pro-
testing the "with prejudice" feature of the dismissal; Zepp
cross-appeals, protesting the refusal to allow counsel fees.
We hold that there was insufficient basis for imposing the
"with prejudice" condition, and, on remand, Zepp will be en-
titled, in connection with the dismissal without prejudice, to

the consideration on ordinary principles of his application for counsel fees.

. *Pleadings.* We sketch the story as disclosed, first, in the pleadings. According to the complaint (filed on April 3, 1987), Zepp and Dr. Irena Bronstein, who had worked together on certain biotechnological studies and research, founded in April, 1986, The Charles Institute, Inc. (Charles Institute), to develop commercial uses for this research. Quest has succeeded to Charles Institute by merger.

Even before the founding of Charles Institute, Zepp and Bronstein had consulted with Professor A. Paul Schaap of Wayne State University (Wayne State) about Schaap's research; Zepp and Bronstein had, indeed, entered with Schaap into mutual nondisclosure agreements.

In June, 1986, Zepp resigned from Charles Institute and in that connection he executed, on June 13, 1986, an assignment to Charles Institute of his rights to inventions conceived or developed while he was with Charles Institute or was working earlier with Bronstein. Zepp agreed in the same document not to disclose any of the inventions to third parties, nor to compete with Charles Institute.

Meanwhile, in June, 1986, Charles Institute, through Bronstein, and Wayne State, by Schaap, were negotiating a licensing agreement under which, in consideration of payments to Wayne State and Schaap, Wayne State would grant to Charles Institute the exclusive commercial use of Schaap's research achievements in the field of chemical compounds called dioxetanes. The negotiations failed.

After Zepp's departure from Charles Institute, Bronstein filed an application for patent with respect to inventions by Zepp and Bronstein which were — it is averred — part of the subject matter of Zepp's assignment to Charles Institute. Zepp, however, in alleged violation of that assignment, refused to join in the patent application or to sign as a coinventor certain documents which were required by the Patent Office. Wayne State, learning of the patent application — a confidential document — sought to secure access to it. For this, Wayne State needed permission from one of the

named coinventors. Accordingly it solicited and secured from Zepp on November 17, 1986, an assignment of his rights in the inventions Bronstein had listed in the patent application and any patent that might be issued. This second assignment is alleged to contradict and to be in breach of Zepp's assignment of June 13, 1986, to Charles Institute (Wayne State and Schaap had prior knowledge of that assignment). Although the Patent Office rejected Wayne State's initial petition to inspect the patent application because the petition was not executed by Zepp, it was understood that the office would allow access to Zepp upon proper request.

The plaintiff feared that, to its irreparable harm, Zepp would, under color of his assignment to Wayne State, and in breach of his assignment to Charles Institute, disclose to Wayne State the substance of the patent application.

The plaintiff Quest in count I charged Zepp with breach of contract (the June 13, 1986, assignment) and violation of other duties owed to it; and, in count II, with unfair and deceptive practices in violation of G. L. c. 93A, §§ 2 and 11. In addition to monetary damages, Quest in its count III and "claims for relief" sought specific performance by Zepp of his assignment of June 13, 1986, and relief against his disclosing confidential information belonging to Quest; against his seeking to obtain access to patent applications for inventions of Bronstein and Zepp; against his transferring his rights or interest in any inventions created or developed in collaboration with Charles Institute or Bronstein; and against his disclosing information previously assigned to Charles Institute.

By his answer, Zepp, after sundry denials, set up as defenses (inter alia) that the assignment of June 13, 1986, was obtained by fraud and misrepresentation, or arose from mutual mistake, or (on a possible reading) lacked consideration; also that any claim being asserted by Quest was preempted by Federal law, and that G. L. c. 93A was inapplicable.

*Application for preliminary injunction.* The plaintiff Quest secured a temporary restraining order but its applica-

·tion for a preliminary injunction failed after hearing on April 22, 1987.[1]

Bronstein's affidavit in support of the application stated that she and Zepp investigated a series of chemical compounds known as dioxetanes or 1, 2 dioxetanes which emit light under certain conditions as protein labels or enzymatic substrates; and they invented a means of triggering light from 1, 2 dioxetanes by means of enzymes. Zepp's assignment of June 13, 1986, extended to the invention, especially so, since in a "Schedule A" appended to the instrument of assignment, listing the subject matter assigned by Zepp to Charles Institute, the following items appeared: "Dioxetanes as labels for proteins and haptens" and "Dioxetanes as enzymatic substrates." And the patent application naming Zepp as a coinventor with Bronstein was entitled "Method of Detecting a Substance Using Enzymatically-Induced Decomposition of Dioxetanes." Zepp, however, wrongfully refused to sponsor the patent application, and wrongfully executed the November 17, 1986, assignment purporting to assign his rights in favor of Wayne State, including those entering into the patent application, which he had previously assigned to Charles Institute. Bronstein asserted that Zepp's actions, which questioned ownership by Quest, had created problems for Quest with potential investors.

Dr. Zepp, in his affidavit opposing the application, said he executed the June 13, 1986, assignment on the understanding that it was limited to an undertaking by him not to compete. With respect to the technological area which he understood to be the subject of dispute in this lawsuit — "enzyme-induced dioxetane decomposition" — neither he nor Bronstein had done any research. For this reason he refused to join in the patent application. He thought any proprietary rights belonged to Schaap and Wayne State; therefore he executed the assignment of November 17, 1986. He understood that there was now a dispute regarding rights between Charles

---

[1]Zepp filed his answer on April 28, 1987, after denial of the plaintiff's motion for a preliminary injunction.

Institute (Quest) and Wayne State over ownership of Schaap's research.[2]

Schaap's affidavit opposing the preliminary injunction stressed his career-long research in dioxetanes. In discussions with Zepp and Bronstein prior to the founding of Charles Institute, he had described his recent success in stabilizing dioxetanes and triggering chemiluminescent decomposition. Zepp at that time suggested that Schaap consider enzyme-induced dioxetane decomposition. Bronstein offered no opinion and made no comment on Zepp's suggestion. Thereafter Schaap did extensive research in using certain enzymes to decompose dioxetanes, without contribution by Zepp or Bronstein, and (thinking himself secure under the nondisclosure agreement) kept Zepp and Bronstein informed. There were negotiations for licensing Charles Institute to utilize commercially the Schaap advances in dioxetane research. This, Schaap believed, was the research at issue in the present lawsuit.

As noted, the judge denied the application for a preliminary injunction (April 22, 1987), stating that "[p]laintiff has not shown a substantial likelihood of success on the merits." He did not offer further explanation.

*Motion for voluntary dismissal.* The plaintiff's motion, pursuant to Mass.R.Civ.P. 41(a)(2), 365 Mass. 803 (1974)[3] to dismiss the action without prejudice was heard in chambers on March 31, 1988. The plaintiff pointed out that with the court's denial of a preliminary injunction, the defendant had had ample time to make disclosures (although no evidence was presented that that had occurred), and anyway, a

---

[2]For lawsuits between Quest (and Bronstein) and Wayne State (and Schaap), see note 5, *infra.*

[3]The rule provides: "(a) Voluntary Dismissal: Effect Thereof . . . . (2) *By Order of Court.* Except as provided in paragraph (1) of this subdivision (a) [allowing voluntary dismissal by the plaintiff before the defendant answers or moves for summary judgment or by stipulation of the parties], an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."

European patent application had now been published[4] disclosing the same information that was contained in the United States application for patent. Thus, protection against the disclosure was moot. Cooperation on the defendant's part in securing a United States patent was no longer needed because of the defendant's denial that he was an inventor. Litigation had been commenced — an action by Wayne State and Schaap against Quest and Bronstein in Michigan State court, and an action by Quest against Wayne State and Schaap in Massachusetts[5] — which might eliminate any need to enforce rights against Zepp. Quest asserted that Zepp would not be damaged by a dismissal without prejudice, whereas a dismissal with prejudice might involve a determination of the merits of Quest's suit against Zepp; in particular, a determination that Zepp's June 13, 1986, assignment to Charles Institute was invalid.

Zepp argued that the real dispute was between Quest and Wayne State. Zepp reasserted that neither he nor Quest (nor Bronstein) had anything to do with this technology, which had been developed by Schaap; yet Quest was claiming ownership based in part on an assignment fraudulently procured by Bronstein from Zepp. Zepp was "merely a strategic tool" in the Quest-Wayne State dispute and a dismissal without prejudice would expose him to another suit by Quest whenever strategy called for it. The present action was vexatious and dismissal should be with prejudice to prevent a repetition of it. There should also be an award of attorney's fees. Such an award, while not unusual where dismissal is without prejudice, is infrequent where dismissal is with prejudice; but

---

[4] On January 28, 1988.

[5] We gather that the issues in these lawsuits include whether Bronstein or Schaap violated the terms of their mutual nondisclosure agreements; whether Wayne State tortiously induced Zepp to violate his contract with Charles Institute; whether Schaap or Wayne State has defamed Bronstein; whether Schaap or Wayne State has engaged in unfair or deceptive business practices in violation of G. L. c. 93A; whether Bronstein or Quest has tortiously interfered with Wayne State's prospective economic advantages, attempted to convert or misappropriate Schaap's research, or fraudulently induced Schaap to reveal his research to Bronstein.

here, Zepp asserted, the action was vexatious. Zepp indicated that, by agreement, Wayne State had paid his counsel fees.

*Decisions.* As noted, the judge ordered dismissal of the action with prejudice but denied attorney's fees. Judgment was entered on April 4, 1988, and (with an immaterial change) was reentered April 11, 1988.

On April 15, 1988, Quest moved under Mass.R.Civ.P. 59(e), 365 Mass. 827 (1974), for reconsideration of its motion to dismiss without prejudice. Quest expressly stated that it wished to reserve its right to proceed to trial rather than accept a dismissal with prejudice. The judge denied the motion on the day of argument.[6]

*Discussion.* (1) The grounds stated by the judge for his decision of the rule 41(a)(2) motion were mistaken.

(a) The judge said the action had been pending for nearly a year without any serious pursuit of it by the plaintiff; under the new time standards being implemented, cases will have to be disposed of within two years; he regretted that Quest had to feel the brunt of these new rules, but that was the way things were.

In fact the Superior Court time standards (Standing Order 1-88, February 1, 1988) were to go into effect as to civil actions filed on or after July 1, 1988, whereas the present action was filed on April 3, 1987 (and, anyway, the present action had not exceeded a two-year period or any of the intermediate periods for filing motions under the time standards). If the judge's ruling can be thought of as a sua sponte dismissal for failure to prosecute, it was inappropriate because the evidence shows[7] that the plaintiff Quest cannot be fairly accused of lack of diligence.[8]

---

[6]As the arguments on the motion for voluntary dismissal and on reconsideration were in chambers and not recorded, the parties prepared and the court approved a joint statement which reconstructed the interchanges.

[7]On the motion to reconsider, Quest submitted correspondence and notes and affidavits of counsel showing that any protraction of the case was due to settlement negotiations or was otherwise by agreement.

[8]Nor can the court's action have been predicated on Mass.R.Civ.P. 41(b)(1), 365 Mass. 804 (1974), which provides for involuntary dismissal by the court for lack of prosecution. The rule requires a three-year period of inactivity in the case and notice to the plaintiff's attor-

(b) The judge indicated that the defendant Zepp could not be awarded his attorney's fees because in fact Wayne State had paid them. We do not see this as a bar to an award of fees to the defendant, if it was otherwise justified.

(2) Although the judge did not say so, he may have dismissed with prejudice because he thought the action was meritless and vexatious, as Zepp asserted. The prior refusal (by another judge) to grant a preliminary injunction on the laconic ground that the plaintiff Quest had not shown a substantial likelihood of success can hardly be taken to prove that the action was a sham. Nor does the record supply such proof. For aught that appears, there was "a real controversy as to essential facts arising from conflicting or doubtful evidence." *Wilkinson* v. *Guarino,* 19 Mass. App. Ct. 1021, 1023-1024 (1985). After all, Zepp did not move to dismiss on the pleadings, or for summary judgment. See *Flynn* v. *Church of Scientology, Inc.,* 19 Mass. App. Ct. 59, 65 n.7 (1984); cf. note 7, *supra.*

(3) Can any sound basis be conjured up for dismissal with prejudice? In the traditional view, a plaintiff may ordinarily dismiss voluntarily under rule 41(a)(2) without forfeiting his claim (but subject, perhaps, to payment of the defendant's attorney's fees); without-prejudice dismissal "should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." 9 Wright & Miller, Federal Practice and Procedure § 2364, at 165 (1971).[9] There is no suggestion here that, should a second like suit be brought hereafter against Zepp (within the period of limitations, much of which has already run), he would be hurt in his ability to present a defense. See *Monahan* v. *Washburn,* 400 Mass. 126, 128-129 (1987); *Ahern* v. *Warner,* 16 Mass. App. Ct. 223, 228-229 (1983);

---

ney not less than one year prior to dismissal. Moreover, the rule provides that such dismissals are without prejudice.

[9] See *Flynn,* 19 Mass. App. Ct. at 65: the test of whether a dismissal with prejudice is called for is "whether to have done otherwise would have caused substantial prejudice to the defendants." See also *Alamance Indus., Inc.* v. *Filene's,* 291 F.2d 142, 146-147 (1st Cir.), cert. denied, 368 U.S. 831 (1961).

*Brissette* v. *Crantz*, 23 Mass. App. Ct. 213, 216-217 (1986).[10] As against any anxiety that the defendant may feel at the thought of possibly being sued a second time,[11] should the dismissal be without prejudice, we have the damage that may be done to the plaintiff's interests, if the dismissal is with prejudice. Quest would be barred by claim preclusion from pursuing a remedy against Zepp for any of the wrongs charged in the present complaint, including his allegedly wrongful repudiation of his assignment to Quest's predecessor. Moreover, if Zepp should figure as a witness in litigation between Quest and Wayne State, the fact of the extinguishment of Quest's claim against him in the present action may have forensic importance, although not in formal issue-preclusion terms.[12]

On the whole, we think the action taken by the judge exceeds any discretion he may have had.

(4) We take note of the further circumstance that Quest, faced with the judge's ruling to dismiss with prejudice, stated that it desired to withdraw its rule 41(a)(2) motion for voluntary dismissal and continue with the action. It has been regularly held that if a court proposes to fasten conditions on dismissal that the plaintiff finds too onerous, the plaintiff need not accept them and is entitled to go forward with the case. See *Flynn*, 19 Mass. App. Ct. at 66-67; 9 Wright & Miller § 2366; 5 Moore's Federal Practice 41.06, at 41-80 (2d ed. 1988). The plaintiff should, however, speak

---

[10]For example, there is no suggestion that defense witnesses will become unavailable or that the defendant was not notified of the claim with sufficient promptness to enable him to preserve necessary records. Contrast *Brissette*, 23 Mass. App. Ct. at 216-217; *Boling* v. *United States*, 231 F.2d 926, 927-928 (9th Cir. 1956).

[11]Although the Quest-Wayne State actions are not duplicitous of the present Quest claim against Zepp, the chance of a later suit by Quest against Zepp is reduced by the possibility of outcomes by judgments or settlement in the former cases that would, as a practical matter, obviate the need for Quest's again claiming against Zepp.

[12]Dismissal of an action with prejudice results in preclusion of the claim, not preclusion of issues where, as here, the issues have not been litigated and determined. See Restatement (Second) of Judgments § 19, § 20, comment d, § 27, comments d and e, § 29 (1982); 9 Wright & Miller § 2373, at 231.

"promptly" if he declines the court's conditions and decides to go forward on the merits. See *Flynn*, 19 Mass. App. Ct. at 67. Here the plaintiff made its request in its rule 59(e) motion for reconsideration filed on April 15, 1988, four days after entry of the amended judgment dismissing with prejudice, which was but eleven days after the hearing on the motion to dismiss. We see no particular reason for holding that the request was delayed unduly.[13] Cf. *Gravatt* v. *Columbia Univ.*, 845 F.2d 54, 55-57 (2d Cir. 1988); *Lau* v. *Glendora Unified Sch. Dist.*, 792 F.2d 929, 931 (9th Cir. 1986); Smith & Zobel, Rules Practice § 41.11, at 61 (1977).

To conclude, Quest is entitled to dismissal without prejudice which may, however, be conditioned upon payment of Zepp's counsel fees if the judge shall find this to be appropriate. This inquiry will follow conventional lines. See *GAF Corp.* v. *Transamerica Ins. Co.*, 665 F.2d 364, 367-370 (D.C. Cir. 1981), on remand, *GAF Corp.* v. *Insurance Co. of No. America*, 96 F.R.D. 188 (D.C. Cir. 1982); compare *Puerto Rico Maritime Shipping Authy.* v. *Leith*, 668 F.2d 46, 51 (1st Cir. 1981).

The judgment is vacated and the case is remanded for entry of a judgment of dismissal without prejudice, conditioned upon the payment of the defendant's reasonable attorney's fees if the judge, after hearing, shall find such condition appropriate.

*So ordered.*

---

[13]The judge in fact said during hearing on the motion to reconsider, "If you want a trial, I'll give you a trial . . . I can give you one in three months." The plaintiff said it "would proceed to trial rather than have a dismissal with prejudice, but asked that the court reconsider its dismissal with prejudice and dismiss without prejudice."