BRENDA MEDEIROS *vs.* MIDDLESEX INSURANCE COMPANY.

No. 97-P-1053.

Middlesex. February 12, 1999. - October 5, 1999.

Present: GREENBERG, LAURENCE, & BECK, JJ.

*Insurance,* Motor vehicle insurance, Underinsured motorist, Coverage, Misrepresentation. *Contract,* Insurance, Misrepresentation. *Joint Tortfeasors. Agency,* Agent's liability to third person. *Practice, Civil,* Dismissal. *Res Judicata.* ·

Where a plaintiff asserting a cause of action against an insurer based on the negligent actions of the insurer's agent voluntarily dismissed with prejudice her claim against the agent, there was no basis for a finding of liability of the insurer; judgment notwithstanding the verdict was properly ordered in favor of the insurer. [54-56]

A Superior Court judge correctly denied an insurer's motion for judgment notwithstanding the verdict on the plaintiff's claim that, based on a relied-upon promise of insurance coverage by an agent of the insurer, an enforceable contract of insurance had been formed. [56-57]

CIVIL ACTION commenced in the Superior Court Department on July 9, 1992.

The case was tried before *Margot Botsford,* J., and a motion for judgment notwithstanding the verdict was heard by her.

*James H. Breen, Jr.,* for the defendant.

*Alan L. Packer* for the plaintiff.

LAURENCE, J. At all times material hereto, the plaintiff, Brenda Medeiros, resided with her boyfriend, James Egan, in a home they owned jointly in Hyannis. David Drinon, an insurance agent undisputedly acting as agent of the defendant insurer, Middlesex Insurance Company, represented to the plaintiff, who frequently drove Egan's automobile, that "in order to be properly insured" she was required to be listed as an additional operator on Egan's motor vehicle liability policy issued by the insurer and that she would then receive the same coverage as Egan. The policy promised to pay damages caused by an

uninsured or underinsured auto to or for "you, or any household member" and defined "you" as "the person named on the Coverage Selections Page." Although Egan was listed as owner of the policy, the plaintiff's name appeared on the coverage selections page as an operator along with Egan's.

In October, 1987, the plaintiff was seriously injured when the automobile she was driving was struck by a vehicle driven by a third party. She obtained $25,000 under the third party's insurance coverage and $10,000 under her own policy's underinsured motorist provisions; she then sought underinsurance benefits under Egan's policy (which carried $100,000 in such benefits). The insurer denied coverage on the ground that the plaintiff was not in fact a "household member" as defined in Egan's policy because she was not "related . . . by blood, marriage or adoption." The plaintiff then brought the instant complaint against Drinon and the insurer seeking (as amended) (1) a declaration that she was entitled to underinsurance benefits under Egan's policy by virtue of being specifically identified and named on the coverage selections page, and (2) damages from Drinon and the insurer on the bases of (a) Drinon's negligent misrepresentations of coverage, which bound his insurer principal, and (b) Drinon's relied-upon promise of coverage, which created an enforceable contract between the plaintiff and the insurer that the latter breached.

Several months before the scheduled trial, the plaintiff moved, with Drinon's assent, for voluntary dismissal of "her claims against [Drinon] . . . with prejudice and without costs or attorneys['] fees to either party, all rights of appeal waived," which motion was subsequently allowed by the court. See Mass. R.Civ.P. 41(a)(2), 365 Mass. 803 (1974). Although the motion additionally stated that "the Plaintiff is pursuing her claims against the Defendant Middlesex Insurance Company, which will remain a party to this suit," the insurer was not a party nor did it assent to the motion. Just prior to the commencement of trial, the trial judge, without explanatory discussion, allowed summary judgment for the insurer on the plaintiff's count for declaratory relief.

The trial in Superior Court produced a hung jury and ended in a mistrial in November, 1996. A second trial proceeded a few days later, on the theories of negligent misrepresentation and breach of contract. In response to special questions, the second jury found that agent Drinon had promised the plaintiff that she

would receive the same coverage as Egan, that Drinon owed the plaintiff a duty to use reasonable care in providing information about the policy, that Drinon's statement was made negligently, was material, and was made with the intent that the plaintiff rely on it, and that the plaintiff reasonably did rely as a result.

The insurer moved for judgment notwithstanding the verdict (n.o.v.) or for a new trial, on the strength of *Elias* v. *Unisys Corp.*, 410 Mass. 479, 481-484 (1991), which held that, where a defendant principal is liable to an injured plaintiff only derivatively, i.e., by reason of the negligent actions of its agent and pursuant to the doctrine of respondeat superior, a general release given in separate settlement by the plaintiff to the agent precludes any further action against the principal.

The trial judge ruled that, while the question was close, there was sufficient evidence to permit the jury to have found that Drinon's statement was a false representation of fact rather than opinion and that the plaintiff relied on his statement to her detriment, and so denied the insurer's motion for a new trial. The judge allowed judgment n.o.v. in part, however, agreeing with the insurer's *Elias* argument as to the negligence claim and concluding that the dismissal with prejudice as to Drinon barred any claim against the insurer arising out of Drinon's negligent misrepresentation. The judge denied judgment n.o.v. as to the plaintiff's contract claim based on Drinon's promise of coverage, holding that the *Elias* principle was limited to tort actions. An amended judgment was entered declaring that the Egan policy did not entitle the plaintiff to underinsurance benefits either as a household member or on the ground that she was named in the coverage selections page, but also that the plaintiff was entitled to underinsured motorist benefits under the Egan policy on the basis of her contract claim. The parties cross-appealed.

1. *Declaratory relief.* The plaintiff asserts that the trial judge erred in allowing the insurer's motion for summary judgment on her declaratory relief count. We agree,[1] but it is unnecessary

---

[1]The record, including the plaintiff's uncontroverted affidavit, clearly reveals policy ambiguity and genuine issues of material fact regarding the respective intentions attributable to the parties at the time the policy was written and the insureds' reasonable expectations of coverage attendant upon the policy provisions and Drinon's representations — ambiguity and issues created, not by statute or language mandated by the Commissioner of Insurance, contrast

to remand the matter in light of our affirmance of the judge's rulings with respect to the plaintiff's contract claim. See *infra* at 56-57.[2]

2. *Judgment n.o.v. as to plaintiff's tort claim.* The plaintiff also challenges the judge's rulings based on *Elias* v. *Unisys Corp., supra,* that the voluntary dismissal of Drinon, with prejudice, was conclusive as to the derivative tort liability of the insurer as Drinon's principal and that the dismissal was "in a practical sense in all material respects" equivalent to a release. She first contends, without recourse to case authority or relevant policy considerations, that *Elias* should be confined to its facts, i.e., situations involving releases, because of its alleged "draconian impact." Substantively, but somewhat inconsistently, she asserts that the language in her dismissal motion, noting that she was continuing to pursue her claims against the insurer as a party defendant, should operate in the same way as an explicit exception contained in a general release or covenant not to sue. Compare *Karcher* v. *Burbank,* 303 Mass. 303, 308 (1939); *Naukeag Inn, Inc.* v. *Rideout,* 351 Mass. 353, 356-357 (1966). We see no merit in these contentions.

The only claim that the plaintiff asserted against Drinon individually was for his negligent misrepresentations, and the only legal basis she had to sue the insurer on account of that negligence was its vicarious liability based on respondeat superior (no separate wrongdoing on its part ever having been alleged, much less proven). The judge correctly observed that the dismissal with prejudice of the only claim and actionable issue against Drinon and the only basis for a finding of tort li-

---

*Bilodeau* v. *Lumbermens Mut. Cas. Co.,* 392 Mass. 537, 541 (1984), but rather by the specific inclusion of the plaintiff in the coverage selections page (thereby arguably identifying her as either a "household member" or the named insured under the policy definitions), as well as by the representations regarding coverage made by the insurer's authorized agent and the plaintiff's expectations of coverage as communicated to that agent.

The existence of substantial factual questions relating directly to the central issue of the parties' intentions rendered impossible a definitive interpretation of the scope of coverage under the Egan policy without further evidentiary development, and thus precluded summary judgment with respect to the requested declaratory relief on the state of this record. See *Robert Indus., Inc.* v. *Spence,* 362 Mass. 751, 753-755 (1973); *Quincy Mut. Fire Ins. Co.* v. *Abernathy,* 393 Mass. 81, 86 (1984), and cases cited; *Flesner* v. *Technical Communications Corp.,* 410 Mass. 805, 809 (1991), and cases cited; *Madden* v. *Estin,* 28 Mass. App. Ct. 392, 395 (1990).

[2]The plaintiff cannot, of course, enjoy duplicative recovery under the policy.

ability on the part of the insurer constituted "an adjudication on the merits" — in Drinon's and therefore in the insurer's favor under the rationale of *Elias* v. *Unisys, supra* — "as fully and completely as if the order had been entered after [a] trial," *Boyd* v. *Jamaica Plain Co-op. Bank*, 7 Mass. App. Ct. 153, 157 n.8 (1979), and definitively resolved the only tort liability issue in the case against the plaintiff. Such a result triggers the operation of res judicata principles "and bars further litigation of all matters that were . . . [thus] adjudicated in the action." *Bagley* v. *Moxley*, 407 Mass. 633, 637 (1990), quoting from *Heacock* v. *Heacock*, 402 Mass. 21, 23 (1988). See *Quest Sys., Inc.* v. *Zepp*, 28 Mass. App. Ct. 489, 497 n.12 (1990); *Gangl* v. *Ford Motor Credit Co.*, 37 Mass. App. Ct. 561, 563 (1994) (a judgment holding an agent or servant not negligent "compels a similar finding, as matter of law, for the principal or master"). A bar arising from a voluntary dismissal with prejudice of a claim (or an outcome-determinative issue) is as conceptually acceptable as one flowing from a general release or covenant not to sue, since in all three scenarios the "terms and conditions are within the discretion of the parties" thereto. *Tuite & Sons, Inc.* v. *Shawmut Bank, N.A.*, 43 Mass. App. Ct. 751, 755 (1997). Indeed, the preclusive effect of the dismissal should, if anything, be entitled to presumptively greater force, since it was presented to a judge for approval and enshrined in the equivalent of a judgment, *ibid.*, rendered in favor of the only party at fault, in the absence of whose wrongdoing the blameless (as to the tort claim and the issue of negligence) insurer would have no liability. See Restatement (Second) of Judgments §§ 19, 24, 29, 49, 51 (1982). This appears particularly appropriate in light of the plaintiff's forgone opportunity to have moved, under Mass. R.Civ.P. 60(b), 365 Mass. 828 (1974), to set aside the dismissal and judgment thereon, if she did not intend that dismissal to have preclusive effect against the insurer, once the latter had asserted such a consequence in its motions for a directed verdict and judgment n.o.v. See *Tuite & Sons, Inc.* v. *Shawmut Bank, N.A.*, 43 Mass. App. Ct. at 755-757, and authorities there cited.[3]

---

[3]We do not view the discussion in *Atlas Tack Corp.* v. *DiMasi*, 37 Mass. App. Ct. 66, 70-72 (1994) (which the parties did not cite), as subversive of our conclusion. There, we noted that "the very specific language" in a release given by the plaintiff to a defendant lawyer charged with malpractice (which stated that the plaintiff "specifically does not release" claims against the two other lawyer defendants who were being sued solely on the ground that they were partners by estoppel of the negligent lawyer and therefore vicariously li-

Accordingly, we uphold the judge's partial allowance of the insurer's judgment n.o.v. motion as to the plaintiff's tort claim.

*3. Denial of judgment n.o.v. as to the plaintiff's contract claim.* The thrust of the insurer's appeal is that the principle of *Elias* v. *Unisys, supra,* should apply equally to actions based upon contract. Its brief, however, makes only conclusory assertions on that issue and offers no coherent or reasoned argument, nor citations to pertinent authority, to support the point. Its argument is, therefore, unavailing to effect a reversal of the judge's ruling declining to extend that principle from the derivative tort liability context in which it was grounded. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See and compare *Zora* v. *State Ethics Commn.,* 415 Mass. 640, 642 n.3 (1993); *Forbush* v. *Lynn,* 35 Mass. App. Ct. 696, 698 n.4 (1994); *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co.,* 40 Mass. App. Ct. 722, 725 n.2 (1996); *Keville* v. *McKeever,* 42 Mass. App. Ct. 140, 155 (1997); *Tuite & Sons, Inc.* v. *Shawmut Bank, N.A.,* 43 Mass. App. Ct. at 754, 756 n.6.

In any event, the insurer's argument misapprehends the fundamental conceptual distinction between a principal's liability for tortious acts of its agent and the principal's contractual liability for enforceable promises made by its agent in the conduct of authorized transactions. The former liability is

---

able for his malpractice) was sufficient to prevent barring the plaintiff's action against the innocent lawyers on a theory of vicarious liability. We do not now have to abandon the conclusion there reached — that it "appears to be . . . the law of this Commonwealth that a covenant not to sue or release will not discharge a vicariously liable party if the covenant contains an express reservation of rights against that party," *id.* at 71-72 — to deem it inapplicable to the instant situation, which involved an effective judgment upon a dismissal with prejudice of the actual tortfeasor, for the reasons discussed in this section.

Moreover, the supposed reservation of rights here was not, unlike that in *Atlas Tack,* "very specific." There, the only claim reserved was the vicarious tort liability count against the supposed partners of the responsible party. Here, the plaintiff also asserted a nonderivative claim against the insurer (in her declaratory judgment count) for coverage as an insured under the policy, as well as a nonderivative contract claim against the insurer (see section 3, *infra*). It cannot, therefore, fairly be said that the plaintiff here, in contrast to *Atlas Tack,* was "specifically" reserving her derivative claims against the insurer based upon its agent's misrepresentations merely by announcing, ex parte, that she "is pursuing her [unspecified] claims against" the insurer. To take advantage of the principle stated in *Atlas Tack,* the document must "contain[] an express reservation of the covenantor's rights," *Karcher* v. *Burbank,* 303 Mass. at 308, in "very specific language." *Atlas Tack,* 37 Mass. App. Ct. at 71.

exclusively vicarious, having been imposed by operation of law notwithstanding the principal's lack of fault or involvement in the actionable transaction. The latter liability, by contrast, is effectively consensual and based upon the ancient principle (albeit a fiction) of the law that "qui facit per alium, facit per se," i.e., the contractual act of the agent has the same legal effect as if done by the principal and makes the principal the actual party to and obligor of the undertaking. See *Fore River Shipbuilding Corp.* v. *Commonwealth*, 248 Mass. 137, 140-141 (1924); 1 Blackstone, Commentaries *429. Compare Restatement (Second) of Torts § 901 (1979), with Restatement (Second) of Contracts § 344 (1981). The judge rightly recognized that distinction in ruling that *Elias* v. *Unisys*, *supra*, has no bearing on a breach of contract claim and does not preclude the plaintiff's recovery on her contract theory.[4]

*Conclusion.* The order granting summary judgment for the insurer on the plaintiff's count I for declaratory relief is reversed, and the amended judgment as to count I is vacated. In all other respects, the amended judgment is affirmed.

*So ordered.*

---

[4]Although the insurer characterizes the contractual obligation alleged here as based upon "promissory estoppel" theory, it is clear that such situations are now treated by our law as ordinary contracts and enforceable pursuant to traditional contract theory. See *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 760-761 (1978); *McAndrew* v. *School Comm. of Cambridge*, 20 Mass. App. Ct. 356, 364 n.11 (1985).