# Hideki Kanamaru *vs.* Holyoke Mutual Insurance Company.

No. 06-P-1290.

Middlesex. November 20, 2007. - August 21, 2008.

Present: Rapoza, C.J., Duffly, & Trainor, JJ.

*Insurance,* Motor vehicle insurance, Uninsured motorist. *Motor Vehicle,* Insurance. *Contract,* Insurance, Promissory estoppel. *Consumer Protection Act,* Demand letter.

A Superior Court judge properly granted summary judgment in favor of the defendant insurance company on the plaintiff's contract claim under the uninsured motorist provision of his unrelated roommate's automobile insurance policy for injuries the plaintiff suffered as a bicyclist struck by an uninsured motorist, where, although the plaintiff was a listed operator on the insurance contract, he did not qualify either as a "named insured" or a "household member" under the policy's terms, and where the insurer's payment of personal injury protection benefits did not alter the unambiguous meaning of the policy with respect to uninsured motorist coverage. [398-404]

A Superior Court judge erred in granting summary judgment in favor of the defendant insurance company on the plaintiff's promissory estoppel theory of recovery for uninsured motorist benefits under his unrelated roommate's automobile insurance policy for injuries the plaintiff suffered as a bicyclist struck by an uninsured motorist, where a reasonable jury could find that the defendant's agent made statements (to the effect that adding the plaintiff's name to the policy made the policy effective for both the plaintiff and the roommate without any conditional difference) that were reasonably intended to induce reliance on the part of the plaintiff, that such reliance was reasonable, and that the plaintiff was harmed as a result of his reliance on the statements. [404-407]

A Superior Court judge properly entered summary judgment in favor of the defendant insurer on a claim of unfair business practices in violation of G. L. c. 93A, where the plaintiff did not plead having sent a demand letter in compliance with the statute's requirement, but instead merely requested that his uninsured motorist claim be paid. [407-408]

Civil action commenced in the Superior Court Department on March 5, 2003.

The case was heard by *Thomas A. Connors*, J., on motions for summary judgment.

*Andrew M. Fischer* for the plaintiff.

*Jon T. Skerry* for the defendant.

RAPOZA, C.J. This appeal presents a question of interpretation of the standard Massachusetts automobile insurance policy, seventh edition, considered in light of the uninsured motorist statute, G. L. c. 175, § 113L. It arises from the grant of summary judgment to the defendant insurance company on both counts of the plaintiff's complaint and the corresponding denial of the plaintiff's cross motion for summary judgment. The plaintiff argues that the motion judge erred when he granted the defendant summary judgment on the first count and found, as matter of law, that the insurance contract in question did not cover the injury he suffered as a bicyclist struck by an uninsured motorist. The plaintiff also argues that the judge erred in granting summary judgment to the defendant on the second count of the complaint, which alleged unfair business practices in violation of G. L. c. 93A and conduct estopping the defendant from denying coverage. For the reasons we shall discuss, we affirm the grant of summary judgment on the insurance contract and c. 93A claims and reverse the grant of summary judgment on the estoppel claim.

*Background.* The plaintiff, Hideki Kanamaru, moved into an apartment with a fellow graduate student, Hideaki Hirata, for the school year 2001-2002. At that time, Hirata owned a car that was insured under a policy issued by the defendant, Holyoke Mutual Insurance (Holyoke). The roommates intended to share the use of the automobile, and Hirata therefore contacted Holyoke to have Kanamaru added to the policy. Hirata and Kanamaru went to the insurance agency together, and they aver that they were told by the sales representative that the addition of Kanamaru's name to the policy made the policy effective as to both of them.

On November 20, 2001, Kanamaru was riding his bicycle[1] and was injured in an accident caused by the driver of an

---

[1]The motion judge incorrectly stated that at the time of the accident Kanamaru was driving the automobile covered by Holyoke under the policy. However, the judge's decision did not rely on this erroneous characterization, nor does either party dispute that Kanamaru was riding his bicycle at the time of the accident.

uninsured vehicle. Upon learning that the vehicle was uninsured, Kanamaru placed Holyoke on notice of his claim under the uninsured motorist provision of the policy.[2] Holyoke denied Kanamaru's claim, interpreting the policy as excluding him from such coverage. Kanamaru sued Holyoke, requesting a declaratory judgment that he was covered by the uninsured motorist provision and claiming damages as a result of Holyoke's alleged unfair business practices. Kanamaru and Holyoke filed cross motions for summary judgment.

Interpreting the standard Massachusetts automobile policy of insurance, seventh edition, that was in effect at the time of the accident, the motion judge granted summary judgment to Holyoke on Kanamaru's request for declaratory judgment. In doing so, the judge concluded that a plain reading of the contractual language indicated that the plaintiff fit into neither of the two possible classifications under the policy that would have permitted uninsured motorist benefits, and rejected Kanamaru's argument that he was otherwise entitled to coverage as a "named insured" under G. L. c. 175, § 113(5), inserted by St. 1988, c. 273, § 47. The judge also granted summary judgment on the second count of Kanamaru's complaint, although he did not discuss Kanamaru's claims for estoppel and c. 93A damages.

*Discussion.* Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as matter of law. *Nunez* v. *Carrabba's Italian Grill, Inc.*, 448 Mass. 170, 174 (2007). Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). In the present matter, we view the facts in the light most favorable to the plaintiff, the nonmoving party against whom judgment was entered. *Nunez* v. *Carrabba's Italian Grill, Inc.*, *supra.*

1. *Insurance contract claim.* We begin by delineating what is not in dispute. The automobile policy at issue provides coverage for the policyholder while driving his automobile and for any other driver operating that vehicle with the policyholder's permission. The policy also requires disclosure to the insurance company of any "household member" or "customary" driver of the insured vehicle and mandates that such persons be classi-

---

[2]He also brought suit against the driver and was awarded a $15,000 judgment, which he was unable to recover.

fied as listed operators on the coverage selections page of the policy. This disclosure requirement allows the insurance company to evaluate a potentially higher risk (e.g., for young drivers or drivers with poor driving records) associated with the normal use of the vehicle, and accordingly to charge a higher premium. As represented by Holyoke at oral argument, failure to disclose an individual who falls within one of these higher risk categories could result in the insurance company's denial of that individual's claim arising from his or her permissive use of the automobile, but only if listing that individual *would have* resulted in a premium increase. It is not in dispute in this matter that, as a listed operator, Kanamaru would have been covered under the policy for a claim arising from his operation of the insured vehicle. The instant claim, however, did not arise in such a context.

Kanamaru asserts that Holyoke breached the contract because he is listed on the policy and therefore covered under its terms as a pedestrian[3] who suffered bodily injury caused by an uninsured motorist. He further claims that the application of the policy to his claim is mandated by the statute requiring uninsured motorist coverage. A plain reading of the policy and the statute leads us to conclude otherwise on both theories.

"[W]here the words of an insurance contract are 'plain and free from ambiguity they must be construed in their usual and ordinary sense.' " *Jacobs* v. *United States Fid. & Guar. Co.*, 417 Mass. 75, 77 (1994), quoting from *Hanover Ins. Co.* v. *Ramsey*, 405 Mass. 1101, 1101 (1989). The presence of equitable considerations in circumstances in which a plain reading of the policy supports a lack of coverage does not create ambiguity in an otherwise unambiguous provision. *Andrade* v. *Aetna Life & Cas. Co.*, 35 Mass. App. Ct. 175, 177 (1993). Nor is this court free to reform the terms of a policy in such a situation. *Ibid.* In the case of an automobile insurance policy, the language of the policy is determined by the insurance commissioner and therefore is exempt from the usual construction against the drafter; rather, it is interpreted in its ordinary sense. *Chenard* v. *Commerce Ins. Co.*, 440 Mass. 444, 445-446 (2003).

---

[3]The parties agree that a bicyclist is a pedestrian for the purposes of the policy.

The terms of the automobile insurance policy at issue here concerning uninsured motorist coverage are not ambiguous as to the matter before us. Specifically, part 3 of the policy, entitled "Bodily Injury Caused By An Uninsured Auto," states that Holyoke will pay damages for, among others: "You, while occupying your auto, while occupying an auto you do not own, or if injured as a pedestrian." "You" is defined in the policy as "the person(s) named in Item 1 of the Coverage Selections Page." On the coverage selections page of the policy, "Item 1" states: "This policy is Issued To: Hideaki Hirata." Thus, the definition of "you" in the present policy clearly denotes the line on the coverage selections page where the person(s) contemplated in that definition are to be found. On that line of the policy, only Hirata's name appears. Kanamaru therefore unambiguously fails to qualify under the provision that says Holyoke will cover "you" if said person is struck by an uninsured motorist as a pedestrian.

Kanamaru makes much of the fact that at the bottom of the coverage selections page, under "Driver Information," two names are listed: (1) Hirata Hideaki and (2) Hideki Kanamaru. However, there is nothing on the face of the policy that indicates that such listing modifies the definition of "you" contained in the contract. Nor do we find availing Kanamaru's argument that because he is listed in this section, the uninsured motorist statute independently requires coverage for his damages as a "named insured." While the statute does mandate that "named insureds" be covered, nothing in G. L. c. 175, § 113L, states or requires that listed operators qualify ipso facto as "named insureds."[4]

Our courts have consistently concluded that "listed operators" have a different status from that of "named insureds." See, e.g., *Depina* v. *Safety Ins. Co.*, 419 Mass. 135, 137 (1994) (spouse-claimant of underinsured motorist benefits was household member and listed operator but not "named insured" on husband's policy); *Mercadante* v. *Worcester Ins. Co.*, 62 Mass. App. Ct.

---

[4]We note that the statute distinguishes between any insured person and a "named insured," thus recognizing that some individuals listed on the policy or covered by it in other ways might not qualify as a "named insured." G. L. c. 175, § 113L(5) ("An insured who is not a named insured on any policy providing uninsured motorist coverage may recover only from the policy of a resident relative providing the highest limits of such coverage whether or not such vehicle was involved in the accident . . .").

293, 294 (2004) (noting that plaintiff was a "listed driver but not a named insured"). As in the policy issued here by Holyoke, in the *Depina* and *Mercadante* cases the "named insured" was the policyholder, not simply any listed operator.

Considering that G. L. c. 175, § 113L, does not state that all listed operators are also "named insureds," and in light of the cases distinguishing between a "named insured" and a "listed driver," we do not conclude that all listed operators necessarily qualify as "named insureds." Thus, nothing in the uninsured motorist statute that mandates coverage for "named insureds" requires Holyoke to compensate Kanamaru under the insurance policy in effect in the present circumstances.

In addition to Kanamaru's failure to qualify as "you" under the policy, Kanamaru also does not qualify under the policy as a "household member." The policy states that it covers "[a]ny household member, while occupying your auto, while occupying an auto not owned by you or if injured as a pedestrian." In the definitions section of the policy, "Household Member" is defined as "anyone living in your household who is related to you by blood, marriage or adoption. This includes wards, step-children or foster children." Kanamaru and Hirata admit that they are not related by blood, marriage, or adoption, nor is Kanamaru the ward, stepchild, or foster child of Hirata. The policy is, once again, unambiguous regarding Kanamaru's coverage. This language is also consistent with the statutory provision requiring coverage for "resident relative[s]," as the policy provides coverage for a wide range of relatives who are living in the household. See G. L. c. 175, § 113L(5).

Prior interpretations of the term "household member" relied upon by Kanamaru do not suggest any other outcome. In *Vaiarella* v. *Hanover Ins. Co.*, 409 Mass. 523, 526-527 (1991), the Supreme Judicial Court stated broadly that, "because modern society presents an almost infinite variety of possible domestic situations and living arrangements, the term 'household member' can have no precise or inflexible meaning." However, the court in *Vaiarella* was considering the part-time residence of a blood relative, and found that such relative was not entitled to be considered a household member because her residence was primarily elsewhere. *Id.* at 528. The language implying flexible construc-

tion of the household member provision therefore arose in the context of determining which relatives actually resided in a household. It does not alter the plain meaning of the definition of "relative" as outlined in the policy.

Furthermore, the case Kanamaru primarily relies upon for his assertion that the "relative" requirement may be expanded beyond its stated definition is inapposite. In *Thattil* v. *Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.*, 415 Mass. 381, 388 (1993), the Supreme Judicial Court found that the plaintiff qualified as a named insured — not a household member — where the plaintiff, a nun, had "merged" her identity with that of her religious order, named as the policy owner. Not only did the court note that the plaintiff did not qualify as a family member, *id.* at 386, but also it limited the holding that she was a "named insured" to the "unique circumstances" presented, because the plaintiff had relinquished all of her possessions to her religious order, which held all property in common. *Id.* at 388-389.

Our conclusion in the instant appeal is consistent with the approach our courts have taken previously with respect to automobile insurance policy provisions under the uninsured motorist statute. In *Andrade* v. *Aetna Life & Cas. Co.*, 35 Mass. App. Ct. at 180, the uninsured motorist provision of a policy owned by a named insured corporation was found not to cover an employee of the corporation who claimed to be a household member of the named insured corporation. This court refused to find that the claimant qualified as a relative of a corporation, even though the corporation was family-owned, the corporation's principal place of business was the family home, and the employee was a member of that family. *Id.* at 177. Similarly, in *Tatarian* v. *Commercial Union Ins. Co.*, 41 Mass. App. Ct. 731, 734 (1996), uninsured motorist benefits under a policy held by a trust were denied to a claimant arguing that he should be covered as a named insured. This court held that the trust itself was the *only* named insured, even though the claimant was the sole listed driver on the policy and was both the trustee and beneficiary of the named trust. *Id.* at 732. These examples limiting the interpretation of uninsured motorist provisions to their precise wording — even where equitable considerations might favor a broader definition — are consistent with our interpretation of the policy before us.

Finally, Holyoke's payment, voluntary or otherwise, of personal injury protection (PIP) benefits[5] does not alter the unambiguous meaning of the policy with respect to uninsured motorist coverage. The PIP provision and the uninsured motorist provision contain sufficiently different coverage language as to render the PIP payment irrelevant as to Holyoke's obligation under the uninsured motorist provision.[6]

Although we conclude that Kanamaru is not entitled to uninsured motorist benefits as a pedestrian under the policy, because he was a listed operator we are nonetheless troubled by the outcome. Holyoke admitted at oral argument that there was no possible way for Kanamaru to obtain uninsured motorist insurance to the same extent as the policy owner without becoming a coowner of the vehicle. According to Holyoke, he would not even be able to pay an additional premium to obtain such coverage. Despite this fact, Holyoke asserts that it could have charged an additional premium for adding Kanamaru as a listed driver, if he had had a prior adverse driving record or other characteristic warranting such a measure. Although beneficial to Holyoke, such a listing would thus procure Kanamaru *no additional benefits* that would not be available to any other person using Hirata's vehicle with his permission.[7]

That Kanamaru's listing as a driver of the vehicle does not

---

[5]At oral argument, Holyoke suggested that it did not owe PIP benefits to Kanamaru and would have been entitled to deny that claim as well. In its brief, however, Holyoke states that PIP benefits were owed to Kanamaru. This inconsistency notwithstanding, whether Kanamaru was entitled to PIP benefits on these facts is not before us, and we accordingly do not decide the question.

[6]In contrast to the "household member" language used for uninsured motorist coverage, a term appearing in boldface as a defined term in the policy, the PIP benefits cover "[y]ou, or anyone living in your household, if injured while occupying an auto which does not have Massachusetts Compulsory Insurance or if struck by an auto which does not have Massachusetts Compulsory Insurance." The term "anyone living in your household" is not in boldface or defined and therefore could reasonably apply to nonrelative household members. Furthermore, this language is consistent with the broader language of the statutory mandate for PIP coverage, which requires PIP coverage for "the named insured or obligor and members of their households" when struck as a pedestrian by an uninsured motorist. G. L. c. 90, § 34A, as amended by St. 1988, c. 273, §§ 15-16. This language contrasts with the "resident relative[s]" covered under the uninsured motorist provision. See G. L. c. 175, § 113L(5), inserted by St. 1988, c. 273, § 47.

[7]At oral argument it also became clear that, according to Holyoke, the

procure him any benefit seems counterintuitive. The "driver information" section is annotated with the following notice: "Check carefully that all operators of your auto(s) are shown. Your failure to list a household member [or] individual who customarily operates your auto may have very serious consequences." One might think, therefore, that listing someone on the policy would procure a benefit not otherwise available. A person in the same circumstances as Kanamaru, however, would realize no such advantage.

In today's society, situations arise with great frequency where roommates and other legally unrelated people live in the same household and also share the use of a vehicle owned by only one party. Nonetheless, we recognize that the effect of G. L. c. 175, § 113L, is to provide a type of limited personal injury insurance chiefly for the benefit of the named insured and for "persons connected in the prescribed fashion with the insured." *Mercadante* v. *Worcester Ins. Co.*, 62 Mass. App. Ct. at 298, citing *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. 450, 452 (1985), and *Shelby Mut. Ins. Co.* v. *Pratt*, 28 Mass. App. Ct. 913, 914 (1989). It is not the function of this court to address matters of policy that are best left to the Commissioner of Insurance or the Legislature. We certainly are not free to alter the plain meaning of an unambiguous provision of the standard Massachusetts automobile policy of insurance, especially where there is no statute mandating coverage for a claim such as Kanamaru's.

2. *Estoppel.* Although the motion judge did not discuss the rationale for his grant of summary judgment on Kanamaru's promissory estoppel theory of recovery, on the record before us we conclude that a grant of summary judgment on this claim is precluded. Kanamaru argues that even if the contractual provi-

policy treated "customary" drivers differently from "occasional" drivers. Holyoke contended that it could have charged more for Kanamaru's addition only if he was a "customary" driver of the vehicle and he had a characteristic that indicated a higher risk. Had he fallen in the higher risk category and been a customary driver but failed to list his name, Holyoke could have denied his claim entirely based upon his failure to be listed (and its corresponding failure to receive a higher payment). Thus, the fact that Kanamaru does not present a high risk scenario means that his coverage is not affected by his listing or non-listing, or by any argument (not made or before us) that he constituted an "occasional" versus a "customary" driver. Holyoke's requirement that all drivers be listed merely permits it to make this evaluation.

sions do not in fact entitle him to uninsured motorist benefits in the present circumstance, Holyoke should be estopped from denying benefits because of the representations made by its agent.[8],[9] Holyoke asserts that Kanamaru has presented insufficient evidence to permit a reasonable jury to find in his favor on each element of his estoppel claim.[10] We disagree.

Estoppel is appropriate where a party can demonstrate "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Sullivan* v. *Chief Justice for Admn. & Mgmt. of the Trial Court*, 448 Mass. 15, 27-28 (2006), quoting from *Bongaards* v. *Millen*, 440 Mass. 10, 15 (2003). The reliance by the party claiming estoppel must have been reasonable in the circumstances. *Weston Forest & Trail Assn., Inc.* v. *Fishman*, 66 Mass. App. Ct. 654, 659 (2006). The plaintiff here has demonstrated a sufficient factual dispute as to all elements of his estoppel claim.

Kanamaru and Hirata signed sworn affidavits attesting that Holyoke's agent told them that adding Kanamaru's name to the policy made the policy effective for both of them "without any conditional difference." Furthermore, Kanamaru averred that he actively sought the insurance coverage from Holyoke, initiated contact with Holyoke, and requested what he believed to be

---

[8] Although Holyoke appears to discuss misrepresentation, both as an independent cause of action and as a basis for a claim of estoppel, Kanamaru argues only the latter claim, and we accordingly consider the record only in light of an estoppel claim.

[9] Holyoke does not contest that the agent whose alleged representations on which Kanamaru claims to have relied was a representative of Holyoke. Nor does it disagree that it would be liable for its representative's acts under the longstanding principle that "the contractual act of the agent has the same legal effect as if done by the principal and makes the principal the actual party to and obligor of the undertaking." *Medeiros* v. *Middlesex Ins. Co.*, 48 Mass. App. Ct. 51, 57 (1999). It does, however, contend that the alleged representations, if any, of their agent were insufficient to support a claim of estoppel.

[10] Holyoke contended for the first time at oral argument that even if there is a basis for Kanamaru's promissory estoppel claim, it is nonetheless barred from paying uninsured motorist benefits where such benefits are otherwise not required by statute. As this argument was not briefed, we do not consider it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). The only argument Holyoke did raise in its brief as to the estoppel claim is an insufficiency of evidence; this is the argument we therefore consider.

insurance coverage from Holyoke by adding his name to the policy. Moreover, it is undisputed that Kanamaru's name was, in fact, added to the policy. Finally, Kanamaru has provided evidence that he is unable to recover either from the motorist or from Holyoke the $15,000 judgment he obtained against the uninsured motorist who struck him.

From this evidence, a reasonable jury could find that an agent of Holyoke did make a statement reasonably intended to induce reliance on the part of Kanamaru. While hardly a foregone conclusion, reasonable inferences from evidence of Kanamaru's proactive and diligent effort to obtain coverage could support a jury finding that Kanamaru believed he was covered and consequently took no further steps to protect against a possible loss, all in reliance on the statement.[11] A jury could also find that such reliance was reasonable based on evidence in the record. For instance, the record would support a finding that the alleged statement implied that Kanamaru need not take any further action to be fully covered under the policy. Contrast *Noble* v. *John Hancock Mut. Life Ins. Co.*, 7 Mass. App. Ct. 97, 99-100 (1979) (finding reliance unreasonable where insured followed only half of instruction from insurance agent and policy later lapsed). Moreover, the jury could find that Kanamaru would not reasonably have recognized upon reading the policy, which listed him as a designated driver, that the coverage was different from what the agent had described. Contrast *Sarnafil, Inc.* v. *Peerless Ins. Co.*, 418 Mass. 295, 306-307 (1994) (finding reliance unreasonable where policy provision was short, coverage was "distinctly absent," and insured was business entity).

Finally, on the issue of detriment, it is undisputed that Kanamaru was physically injured as a result of the accident, as evidenced by the $15,000 judgment against the uninsured motorist for his injuries. It is also uncontested both that he was unable to collect the judgment from the driver who struck him and that Holyoke has never paid his claim based on those injuries. These facts would support a finding that Kanamaru was harmed as a

---

[11]For example, at a minimum, Kanamaru could have become a coowner of the vehicle, which would have allowed him to become a coowner of the policy. As Holyoke represented at oral argument, he then would have qualified as a "named insured."

result of his reliance on the statements allegedly made by Holyoke's agent. See *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 715 (1989) ("Where an insurer's [misrepresentation] misleads an insured reasonably to believe that there is coverage for a type of loss that in fact occurs, the insured may satisfy its burden of proof of detrimental reliance . . . simply by demonstrating that the loss occurred").

Our ruling today on the issue of estoppel is consistent with a factually similar case in which we upheld a jury verdict for the plaintiff. In *Medeiros* v. *Middlesex Ins. Co.*, 48 Mass. App. Ct. 51, 51 (1999), the defendant-insurer's agent told the plaintiff that "in order to be properly insured" the plaintiff needed to be listed as an additional operator on her live in boyfriend's automobile policy. He further stated that this act would allow her to receive the same coverage as her boyfriend. *Ibid.* The plaintiff then made a claim for underinsured benefits on her boyfriend's policy, which the defendant-insurer denied. *Id.* at 52.

At trial, the jury returned a verdict for the plaintiff, finding that the contract was enforceable on estoppel grounds, more specifically, that the statements made were intended to be relied upon and that the plaintiff did reasonably rely upon them to her detriment. *Id.* at 52-53. The judge denied the motion for judgment n.o.v. on the claim based on the agent's promise of coverage, a ruling upheld on appeal. *Id.* at 56-57.

The fact that Holyoke denies that its agent made the statements alleged by Kanamaru does not entitle it to summary judgment on the claim but rather merely raises a credibility issue, the resolution of which is for the jury. Its contention that the statements, if made, were susceptible to different meanings and its assertion that Kanamaru's evidence of reliance is unpersuasive are likewise matters going to the weight of the evidence for consideration by a jury. The judge thus erred in granting summary judgment to Holyoke on Kanamaru's estoppel grounds for recovery.

3. *Chapter 93A.* Chapter 93A, the Massachusetts Consumer Protection Act, requires a plaintiff to make a written demand letter asking for reasonable relief thirty days prior to filing a lawsuit for treble damages. G. L. c. 93A, § 9(3). Not only must such a letter be sent, but plaintiff must also plead that he has

complied with this requirement as a prerequisite to suit. *Entrialgo* v. *Twin City Dodge, Inc.,* 368 Mass. 812 (1975). See also *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. 274, 287 (1985) (demand letter is special element of c. 93A claim that must be alleged and proved). Kanamaru did not plead having sent a letter in compliance with this requirement; indeed, the letter that he did send to Holyoke specifically stated that he was not making "such a [c. 93A] claim now," and instead merely requested that his uninsured motorist claim be paid. Summary judgment was therefore properly entered for the defendant on this claim.

4. *Conclusion.* That portion of the judgment that dismisses the claim based on estoppel is reversed and the matter is remanded to the Superior Court for further proceedings in accordance with this decision. The remaining portions of the judgment are affirmed.

*So ordered.*