COMMONWEALTH *vs.* TONY ESKANIAN, individually and
as trustee,[1] & others.[2]

No. 07-P-2006.

Suffolk. December 4, 2008. - July 21, 2009.

Present: BERRY, SMITH, & COHEN, JJ.

*Gasoline Stations. Hazardous Materials. Massachusetts Oil and Hazardous Material Release Prevention Act. Department of Environmental Protection. Environment,* Air pollution. *Practice, Civil,* Discovery.

In a civil action alleging that the owners or operators of four gasoline stations violated the Massachusetts Oil and Hazardous Material Release Prevention Act, G. L. c. 21E, and the vapor recovery requirements of the Massachusetts Clean Air Act, G. L. c. 111, §§ 142A-142O, the judge properly granted summary judgment in favor of the Commonwealth as to the defendants' liability for failure to submit required forms to the Department of Environmental Protection (department) documenting cleanup efforts, where, under G. L. c. 21E, which operates on a strict liability standard, the trigger to liability was the knowledge of the responsible party, and there was no statutory obligation that the department separately notify defendants before assessing penalties for failure to comply with filing requirements [669-670]; similarly, nothing in G. L. c. 111, § 142O(*b*), contradicted the requirement of an annual compliance certification or created a notice requirement before fines could be assessed for failure to comply with that requirement [671]; finally, no departmental custom bound the department to issue notice [671].

In a civil action alleging violation of the Massachusetts Oil and Hazardous Material Release Prevention Act and the Massachusetts Clean Air Act, the judge properly granted summary judgment in favor of the Commonwealth as to the defendants' liability for failure to submit required forms to the Department of Environmental Protection documenting cleanup efforts, where the defendants' hiring of licensed site professionals (LSPs) to meet the cleanup requirements under the applicable statute and regulations did not shift responsibility for compliance with the intricacies of the regulatory framework to those LSPs. [671-673]

In a civil action alleging violation of the Massachusetts Oil and Hazardous

---

[1]Of 350 Salem Street Realty Trust and 271 Salem Street Trust.

[2]Ramona Eskanian, as trustee of 856 Eastern Avenue Realty Trust and 353 Salem Street Trust; Route 60 Econo Gas; Carlos's Fuel, Inc.; and J&S Petroleum Corp.

Material Release Prevention Act and the Massachusetts Clean Air Act, the judge properly granted summary judgment against an individual defendant as an operator of the relevant sites, where the defendant failed to allege specific facts establishing a genuine, triable issue of fact (i.e., that he was an employee who could not be held liable) [673-674]; similarly, the judge properly granted summary judgment against a corporate defendant, where the evidence was uncontroverted that that defendant was the operator of one of the sites at the relevant times [674].

There was no merit to the contention that, in a civil action, the decisions of the judge on matters of discovery rose to the level of prejudicial error. [675]

CIVIL ACTION commenced in the Superior Court Department on June 16, 2004.

The case was heard by *Bruce R. Henry*, J., on a motion for summary judgment, and entry of final judgment was ordered by *Carol S. Ball*, J.

*Joseph Spinale* for the defendant.

*Louis M. Dundin*, Assistant Attorney General, for the Commonwealth.

BERRY, J. The Commonwealth filed a complaint against (1) Tony Eskanian, both in his individual capacity and as trustee of 350 Salem Street Realty Trust and 271 Salem Street Trust; (2) Ramona Eskanian, as trustee of 856 Eastern Avenue Realty Trust and 353 Salem Street Trust; (3) Route 60 Econo Gas; (4) Carlos's Fuel, Inc.; and (5) J&S Petroleum Corp. (J&S Petroleum) (collectively, defendants). The defendants owned or operated four gasoline stations.[3] The Commonwealth alleged violations of the Massachusetts Oil and Hazardous Material Release Prevention Act, G. L. c. 21E; and the vapor recovery requirements under the Massachusetts Clean Air Act, G. L. c. 111, §§ 142A-142O (CAA).

At the close of discovery, the Commonwealth filed a motion for partial summary judgment as to the defendants' liability for failure to submit required forms to the Department of Environmental Protection (DEP or department) documenting cleanup efforts pursuant to c. 21E and the CAA. A Superior Court judge

[3]The four gasoline stations are (1) Station 2000, in Malden; (2) Medford Auto Clinic, in Medford; (3) Route 60 Econo Gas Tony's Auto, Inc., in Medford; and (4) Carlos's Fuel, Inc., also known as Tony's Auto, Inc., doing business as 93 Service Station, in Medford.

granted the motion for partial summary judgment. The Commonwealth then moved for an assessment of damages and entry of final judgment. A second Superior Court judge granted the motion, entered judgment for the Commonwealth, ordered the defendants to comply with a remediation schedule, and assessed penalties totaling $600,000.

On appeal, the defendants do not contest their failure to file the required documentation that comprises the substance of their violations. Rather, they argue that (1) the DEP was statutorily obligated to notify the defendants of any violation before assessing a penalty or, in the alternative, that the DEP is bound by custom to notify responsible parties about violations; (2) by hiring a licensed site professional (LSP) to certify the cleanup, the defendants no longer were responsible for filing the required documentation; (3) one of the defendants, Tony Eskanian, is an employee of the gasoline stations rather than an operator, and therefore not liable in his individual capacity; (4) another of the defendants, J&S Petroleum, is not a proper party to this case; and (5) the Commonwealth's failure to provide certain discovery requests denied the defendants the opportunity to mount a meaningful defense.

1. *Background.* General Laws c. 21E and its implementing regulations, collectively known as the Massachusetts Contingency Plan (MCP), 310 Code Mass. Regs. §§ 40.0000 et seq. (1993), set forth the legal obligations for investigating and addressing contamination due to the release of oil or hazardous materials.[4] Pursuant to G. L. c. 21E, § 7, as appearing in St. 1992, c. 133, § 302, "Any owner or operator of a site[,] . . . as soon as he has knowledge of a release or threat of release of oil material, shall immediately notify the department thereof."[5,6] Once notification occurs, reports are required to be filed at

---

[4]We note that for the purposes of the MCP, owners, operators, and other persons liable under G. L. c. 21E, § 5, are collectively referred to as the responsible party or the potentially responsible party. See 310 Code Mass. Regs. § 40.0006 (1993).

[5]We recite the language from the statute in effect at the time of the earliest release, i.e., August of 1993. The statute subsequently has been amended.

[6]Under c. 21E and its implementing regulations, notification is the affirmative duty of an owner, operator, or other person to contact the DEP once there has been a release or a threat of a release of oil material. See G. L. c. 21E, § 7; 310 Code Mass. Regs. § 40.0300 (1993).

each of five phases of the assessment and cleanup process. Deadlines for submission of reports are set forth in 310 Code Mass. Regs. §§ 40.0550 and 40.0560 (1993). As mentioned, *supra*, the defendants failed to file a number of these required phased reports, and filed certain phased reports that were deemed incomplete by the DEP.

The CAA fulfils this State's requirements under the Federal Clean Air Act Amendments of 1990. In order to reduce ground level ozone levels, Massachusetts has mandated the instalment of stage I and stage II vapor recovery systems at fuel dispensing facilities. The DEP requires annual certifications for these systems, and the defendants failed to submit these required documents in a timely manner. See 310 Code Mass. Regs. § 7.24(6)(c) (2000).

2. *Standard of review.* In reviewing a grant of summary judgment, an appellate court shall determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

3. *Notice requirements.* The defendants' main argument is that a genuine issue of disputed material fact remains whether the DEP was required to give notice each time the defendants failed to file a document, before a penalty for noncompliance could be levied. The defendants contend that notice was statutorily required, specifically, by 310 Code Mass. Regs. § 40.0160 (1993) and the statutory scheme. In the alternative, the defendants contend that notice was required by prior custom of the DEP. We address each, in turn.

a. *Notice under G. L. c. 21E.* The statutory scheme of G. L. c. 21E operates on a strict liability standard; once a responsible person is made aware of a violation of either c. 21E or the CAA, either by self-reporting or a notice of responsibility from the DEP, compliance with the statutory framework requires no further notice. See G. L. c. 21E, §§ 4A, 5, 7.

The defendants argue that notice was required in their case by 310 Code Mass. Regs. § 40.0160(1)(a) (1993), which states that "[t]he Department shall attempt to identify and notify [re-

sponsible parties] and [potentially responsible parties] of their potential liability under [G. L.] c. 21E through the issuance of a Notice of Responsibility (NOR) prior to taking or arranging a response action." At the threshold, a problem with the defendants' reliance on this regulation is that 310 Code Mass. Regs. § 40.0160 further states that "[f]ailure by the Department to give notice to an owner or operator of the Department's intention to perform a response action shall not limit or preclude any [responsible party's] or [potentially responsible party's] liability pursuant to [G. L.] c. 21E, 310 [Code Mass. Regs. §§] 40.0000 or any other law." 310 Code Mass. Regs. § 40.0160(2)(d) (1993). The defendants' attempt to use this regulation as a binding requirement that the DEP give notice before taking any action adverse to the defendants is therefore unavailing.

The statutory scheme relies both on responsible parties notifying the DEP of the initial violation as well as on the possibility of the DEP making the responsible party aware of the violation through a notice of responsibility, and thus, it is clear that the trigger to liability is the knowledge of the responsible party (RP). Once the defendants became aware of the violations, they were drawn into the statutory scheme of c. 21E and the accompanying regulations. This includes compliance with all filing requirements, including the phased reports.[7] The defendants do not contest that they were aware that they had committed violations, and were involved in c. 21E cleanup efforts. There is no further statutory obligation that the DEP separately notify the defendants before assessing penalties for failure to comply with filing requirements.

---

[7]Title 310 Code Mass. Regs. § 40.0022 (1993) states as follows:

*"Accurate and Timely Submittal of Documents*

"(1) Except as provided by 310 [Code Mass. Regs. §] 40.0025, each person who is required by [G. L.] c. 21E, 310 [Code Mass. Regs. §] 40.0000 or any order or determination of the Department, to make one or more submittals to the Department shall make each submittal by the deadline or within the time period imposed therein.

"(2) No person shall make, or cause any person to make, any false, inaccurate, incomplete or misleading statement in any document which that person submits, or causes any person to submit, to the Department pursuant to [G. L.] c. 21E, 310 [Code Mass. Regs. §] 40.0000 or any order or determination issued by the Department."

b. *Notice under CAA.* Under the CAA, fuel dispensing facilities are required to annually submit to the DEP a signed, in-use compliance certification that attests that the required compliance tests were performed and passed not more than thirty days prior to the date postmarked on the envelope in which the form is submitted. 310 Code Mass. Regs. § 7.24(6)(c)(3) (2000). In order to circumvent their admitted failure to comply with this requirement, the defendants cite G. L. c. 111, § 142O(*b*), inserted by St. 2002, c. 242, which states that "[t]he department shall notify a motor vehicle fuel dispensing facility owner and operator, in writing, within 30 days of an inspection, when the department determines that a violation of its stage II system rules has occurred."

As with their argument in regards to G. L. c. 21E, the defendants seek to impute a broad responsibility to notify by citing to a specific mechanism that operates as part of the regulatory scheme. The paragraph of the statute to which the defendants cite refers only to the notice that will be given after an inspection, if any violations of the stage II system rules are discovered. There is nothing in that paragraph that either contradicts the required annual compliance certification or creates a notice requirement before fines can be assessed for failure to comply with the annual certification requirement. See *Roberts* v. *Enterprise Rent-A-Car Co. of Boston*, 438 Mass. 187, 194 (2002), *S.C.*, 445 Mass. 811 (2006) ("We interpret statutes as a whole to produce internal consistency"); *Cote-Whitacre* v. *Department of Pub. Health*, 446 Mass. 350, 387 (2006) ("Insofar as possible, we construe a statutory provision to conform to the entire statutory scheme").

c. *Notice requirement by custom.* The defendants contend, in the alternative, that the DEP was bound to issue notice by prior custom. The basis for this argument rests on a solitary reference during the deposition of Thomas Nattario, an environmental engineer for the DEP, that the DEP typically issues notices to site owners and operators before fines are assessed for violations. This reference is insufficient to create a genuine issue of material fact whether notice was required, nor does such a reference define the DEP's legal authority to act or create a new legal responsibility.

4. *Licensed site professional.* The defendants also argue that,

because the DEP mandated that they hire licensed site professionals to meet the cleanup requirements under G. L. c. 21E and the MCP, responsibility for compliance with the intricacies of the regulatory framework was shifted to the LSPs. However, as a strict liability scheme, the requirement to hire private LSPs does nothing to shift from the defendants the ultimate responsibility for violations.

Responsible parties and LSPs have clearly enumerated roles under the statute and its implementing regulations, and at no point is an RP able to shift the responsibilities that come with liability. See, e.g., 310 Code Mass. Regs. § 40.0169 (1993) (role of LSPs). Contrast 310 Code Mass. Regs. § 40.0170 (1993) (role of RPs, potentially responsible parties [PRPs], and other persons in response actions) and 310 Code Mass. Regs. § 40.0171 (1993) ("In the event that a RP, PRP or Other Person initiates a response action that is determined by the Department to be in noncompliance with [G. L.] c. 21E, 310 [Code Mass. Regs. §] 40.0000 or any other applicable requirement, or in the event that no person undertakes a necessary response action, the Department may take any or all of the following actions: . . . [4] take any other action and seek any other relief authorized by [G. L.] c. 21E, 310 [Code Mass. Regs. §] 40.0000 or any other law"). Nothing in the regulatory scheme suggests that a response action is concluded, or that an RP is no longer strictly liable, upon hiring an LSP.

Furthermore, the rules governing the authority of LSPs, found at G. L. c. 21A, §§ 19-19J, establish that LSPs are licensed, quasi governmental workers whose role is to advise and guide the cleanup efforts of RPs. Though the regulatory scheme requires that RPs hire LSPs, the LSP remains an agent of the government for all intents and purposes. For example, G. L. c. 21A, § 19E, inserted by St. 1992, c. 133, § 270, states that "[a]ny monetary claims against an employee of the Commonwealth based on noncompliance with sections nineteen through nineteen J, inclusive, including any claim based on a failure to use due care in the execution of his duties as a licensed hazardous waste site cleanup professional [LSP], shall be limited to actions brought under the provisions of chapter two hundred and fifty-eight."[8] With LSPs

---

[8]General Laws c. 258, §§ 1 et seq., are the sections discussing "Claims and Indemnity Procedure for the Commonwealth, its Municipalities, Counties and Districts and the Officers and Employees Thereof."

effectively brought under the umbrella of governmental liability, they are more akin to a quasi governmental entity than to a third party who can divest the defendants of liability. Thus, in this case, the actions of the LSPs do nothing to limit penalties based on the strict liability of the defendants.

5. *Individual liability.* The defendants argue that summary judgment should not have issued against Eskanian in his individual capacity because a genuine issue of material fact remains as to whether he was an operator of the relevant sites, or simply an employee who cannot be held liable. See G. L. c. 21E, § 5; 310 Code Mass. Regs. § 7.24(6) (1991). As evidence for this purported factual discrepancy, the defendants offer an affidavit from Eskanian, in which he makes generalized statements about his employer, an unnamed corporation.[9]

"[I]f the moving party shows that there is no issue for trial, the opposing party must respond and allege specific facts which establish that there is a genuine, triable issue, or summary judgment (if appropriate in all other respects) will be entered against him." *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 554 (1976). The self-serving, uncorroborated affidavit of Eskanian does not allege any fact with sufficient specificity to raise a genuine issue. See *Kirschbaum* v. *Wennett*, 60 Mass. App. Ct. 807, 809 n.4 (2004).

In this case, the moving party, the DEP, attached as support for its motion for summary judgment the affidavit and exhibits of Timothy J. Boyle, the DEP staff member assigned to oversee MCP compliance at the four gasoline stations at issue. In a table appended to Boyle's affidavit, Eskanian is recorded as committing violations while operator of Station 2000, while operator of Econo Gas, while operator of Medford Auto Clinic,[10] and as owner and operator of Carlos's Fuel. Boyle attached further documentation showing Eskanian to be the operator of all four

---

[9]The affidavit of Eskanian states, "I am an employee of a corporation which operates the stations in Medford which [the DEP] did not name as a Defendant in this matter and which holds a lease and sublets the property in Malden to others," and that he has "also acted as an agent for the title owners of the properties mentioned in the [DEP's] Complaint."

[10]Eskanian also is listed as owner of Medford Auto Clinic since 1998, as trustee of 350 Salem Street Realty Trust.

stations during the relevant times of the violations, and personally attests that he observed Eskanian operating Station 2000 on multiple visits.

In their brief, the defendants cite, and then elaborate upon, the affidavit of Eskanian in an attempt to create a genuine issue of material fact. As previously noted, Eskanian's affidavit does not make any specific references to the corporation by which he is supposedly employed, or to the title owners for whom he works as an agent. In short, the defendants fail to offer any evidence that refutes or calls into question the evidence offered by the Commonwealth.

6. *J&S Petroleum as proper party.* The defendants contend that partial summary judgment should have been denied as to J&S Petroleum because it was not the operator of Station 2000 when the initial violations occurred. However, this misinterprets the attachment of strict liability under these statutory schemes. See G. L. c. 21E, § 5(*a*), inserted by St. 1983, c. 7, § 5 ("[1] the owner or operator of a vessel or site from or *at which there is* or *has been* a release or threat of release of oil or hazardous material . . . shall be liable, without regard to fault . . ." [emphasis supplied]).

According to the uncontroverted testimony of Boyle, the Commonwealth's expert, he observed Eskanian with Jack Milhelm (the president of J&S Petroleum) "jointly" operating Station 2000 between October 1, 2003, and January 19, 2005. The Commonwealth began citing J&S Petroleum for failure to file required documents beginning on October 3, 2003, which is consistent with those dates.[11]

---

[11]The issuance of the citations is consistent with the following three subsections of the MCP, which state, in pertinent part, as follows:

> "An RP . . . shall submit a Tier Classification Submittal and, if applicable, a Tier I Permit application to the Department . . . ."

310 Code Mass. Regs. § 40.0501(3) (2003).

> "[A]ny person undertaking response actions at a Tier I disposal site pursuant to a Tier I Permit shall submit the following documents to the Department by the following deadlines . . . ."

310 Code Mass. Regs. § 40.0550(2) (2003).

> "[A]n RP . . . undertaking response actions at a Tier II disposal site

7. *Discovery issues.* The defendants contend that the Commonwealth violated the "purposes and spirit" of the discovery rules by "hindering access to public record documents." We disagree. "Decisions on the scope of discovery are committed to the sound discretion of the trial judge. . . . The burden is on an appellant to demonstrate a 'prejudicial error resulting from an abuse of discretion.' " *Adoption of Paula*, 420 Mass. 716, 734 (1995), quoting from *Solimene* v. *B. Gravel & Co., KG*, 399 Mass. 790, 799 (1987). The defendants have presented no case law or evidence that the decisions of the judge on matters of discovery rose to the level of prejudicial error.

*Judgment affirmed.*

shall submit the following documents to the Department by the following deadlines . . . ."

310 Code Mass. Regs. § 40.0560(2) (2003).