SUPERIOR COURT 
 
 BOSTON SEAPORT M1&2 LAND, LLC v. COMMISSIONER OF REVENUE

 
 Docket:
 2584CV00039-BLS2
 
 
 Dates:
 May 28, 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER DENYING DEFENDANT’S MOTION TO STAY PROCEEDINGS AND AUTHORIZING PLAINTIFF TO PROCEED WITHOUT EXHAUSTING THE REMAINING ADMINISTRATIVE PROCEDURES
 
 

 Boston Seaport M1&2 Land, LLC, contends that it is entitled to a Brownfields tax credit for costs it incurred to remediate environmental contamination of property in Boston. The Department of Revenue issued a Final Determination denying Boston Seaport’s application for such a credit under G.L. c. 63, § 38Q,[1] back in February 2023. Boston Seaport promptly filed an administrative appeal, which is still pending more than two years later. Boston Seaport filed this action in January 2025, claiming that it should not be required to exhaust any further administrative appeals and that it is entitled to the credit as a matter of law. The Commissioner of Revenue has filed a motion seeking to stay this matter until the administrative appeal is complete, which the Commissioner says will take at least until late in 2025, and perhaps longer.
In the exercise of its discretion, the Court concludes that Boston Seaport should not have to exhaust its administrative appeals before seeking a determination
 
--------------------------------------------
 
[1] Boston Seaport alleged in its complaint that it is entitled to a Brownfields tax credit under G.L. c. 62, § 6(j), which applies to personal income tax assessed against individuals. The parties now agree that Boston Seaport’s application was actually under G.L. c. 63, § 38Q, which provides an identical credit against income tax paid by business corporations. The Court understands this to mean that Boston Seaport is taxed under c. 63 either because it is a single-member LLC or because it elected to be taxed at the LLC level. Under Massachusetts tax law, an LLC with two or more members is treated as a partnership (which means that its income is not taxed at the LLC level, but instead passed through to its members who are subject to personal income tax) unless the LLC elects to be taxed as a corporation (in which case the LLC is subject to corporate income tax, and distributions made to individual members are also subject to personal income tax). See St. 2008, c. 173; 830 C.M.R. § 63.30.3; Pogorelc v. Commissioner of Revenue, Docket No C328710, 2018 WL 5098822, at *3-*4 (Mass. App. Tax Bd. Oct. 4, 2018), aff’d, 98 Mass. App. Ct. 41 (2020).
 
                                                            -1-
 
as to whether by statute the amount of the credit must be based on the remediation costs that a Licensed Site Professional (“LSP”) determined were necessary, and therefore the denial of its credit application was improper as a matter of law. The Court will deny the Commissioner’s motion to stay these proceedings and order the Commissioner to file the existing administrative record within the next seven weeks.
The administrative record serves as the answer in a case like this, where a party seeks certiorari review of and declaratory relief concerning an administrative agency decision. See Superior Court Standing Order 1-96. Once the administrative record has been assembled and filed, Boston Seaport will be able to serve a motion for judgment on the pleadings, as the vehicle for resolving this action for judicial review. Id. ¶ 4.
1. Legal Standards re Exhaustion of Administrative Remedies. “As a general rule, where an administrative procedure is available” from a state agency, a party must “exhaust the opportunities for an administrative remedy” before seeking injunctive or declaratory relief in court. Space Bldg. Corp. v. Commissioner of Revenue, 413 Mass. 445, 448 (1992). Even where a party contends that the agency lacks jurisdiction or power to act, the agency generally “should have an opportunity to ascertain the facts and decide the question for itself….” Wilczewski v. Commissioner of the Dept. of Envtl. Quality Eng’g, 404 Mass. 787, 793 (1989), quoting Saint Luke’s Hospital v. Labor Relations Comm’n, 320 Mass. 467, 470 (1946).
However, a judge has the discretion to let a civil action proceed in court before a pending administrative action if completed if the “administrative remedy is ‘seriously inadequate.’ “ Luchini v. Commissioner of Revenue, 436 Mass. 403, 405 (2002), quoting Space Bldg. Corp., supra. “Only in extraordinary cases may a court take jurisdiction of a matter that is pending before an administrative agency.” Temple Emmanuel of Newton v. Massachusetts Comm’n Against Discrim., 463 Mass. 472, 479 (2012).
The Supreme Judicial Court has identified four circumstances in which a court may grant relief before an administrative agency has made a final decision in an adjudicatory proceeding pending before it. Id. at 479–483. First, “[i]n cases where resort to an administrative agency obviously would be futile, and there is no fact-finding function for the agency to perform, a court may exercise jurisdiction despite a plaintiff's failure to exhaust administrative remedies.” Norfolk Elec., Inc. v. Fall River Housing Auth. 417 Mass. 207, 210 (1994). Second, exhaustion may be waived if a case “presents a purely legal question of wide
 
                                                            -2-
 
public significance.” Kelleher v. Personnel Adm'r of Dept. of Personnel Admin., 421 Mass. 382, 385 (1995); accord Space Bldg, 413 Mass. at 448. Third, a court may exercise jurisdiction without requiring exhaustion where “pursuing the administrative remedy will result in irreparable harm to either party.” Temple Emmanuel, 472 Mass. at 480. Finally, exhaustion is not required before a court may decide “a question of law ‘peculiarly within judicial competence.’ “ Id., quoting Everett v. Local 1656, Int’l Ass’n of Firefighters, 411 Mass. 361, 368 (1991).
If any of these four factors applies in a particular case, a judge may—but is not required to—entertain a claim for declaratory relief without requiring the plaintiff first to exhaust their administrative remedies. Whether to do so is a matter of discretion; it is rarely required. See Luchini, 436 Mass. at 405 (exceptions to exhaustion “may be made in the judge’s discretion”); but see Space Bldg, 413 Mass. at 448–449 (judge abused discretion in requiring plaintiff to exhaust remedies before appellate tax board, because claim that Commissioner failed to comply with procedural requirements of G.L.  c. 30A, § 11(7), raised pure question of law that board lacked jurisdiction to decide).
2. Analysis. The Court is persuaded that Boston Seaport’s claim about the Brownfields tax credit statute “presents a purely legal question of wide public significance.” Cf. Kelleher, 421 Mass. at 385. It will exercise its discretion to permit Boston Seaport to press this claim without awaiting the results of the continuing administrative appeal process before the Department of Revenue.
“[I]n the tax field, … a declaratory action is not ousted merely by the fact that the taxpayer has an administrative path to relief.” ACE Property & Cas. Ins. Co. v. Commissioner of Revenue, 437 Mass. 241, 243 (2002), quoting Space Bldg. Corp., 413 Mass. at 448. Exhaustion of administrative remedies is not required “when important, novel, or recurrent issues are at stake, when the decision has public significance, or when the case reduces to a question of law.” Id.; accord S.J. Groves & Sons Co. v. State Tax Comm’n, 372 Mass. 140, 142–143 (1977) (judge did not abuse discretion in entertaining declaratory action concerning whether certain items purchased by construction contractor on a public works project are exempt from sales and use taxes as a matter of law, without requiring exhaustion of appeal to Appellate Tax Board).
The Legislature adopted the Brownfields tax credit to encourage environmental cleanup of properties in economically distressed areas. A business corporation that pursues an environmental response action at such a property pursuant to G.L. c. 21E is generally entitled to a credit once it “achieves and maintains a permanent solution or remedy operation status in
 
                                                            -3-
 
compliance with chapter 21E and the regulations adopted under that chapter,” so long as the costs incurred to achieve that result are “not less than 15 per cent of the assessed value of the property before remediation.” See G.L. c. 63, § 38Q(a). The credit is generally equal to either 25 percent of the corporations’ Net Response and Removal Costs if an activity and use limitation (“AUL”) is in place, or 50 percent if the permanent solution or remedy operation status does not involve an AUL. Id.; see also 830 Code Mass. Regs. § 63.38Q.1(3). “Net Response and Removal Costs” are defined as “expenses paid by the taxpayer for the purposes of achieving a permanent solution or remedy operation status in compliance with chapter 21E.” G.L. c. 63, § 38Q(d).
The Massachusetts Contingency Plan is a set of regulations promulgated by the Massachusetts Department of Environmental Protection (“MassDEP”) to implement the environmental  cleanup process   required  under  G.L.  c.  21E, § 3(b). See Peterborough Oil Co., LLC v. Department of Environmental Protection, 474 Mass. 443, 446 (2016). These regulations require that any party responsible or potentially responsible for cleaning up oil or hazardous material contamination retain an LSP to guide that process. See 310 Code Mass. Regs. § 40.0169; Commonwealth v. Eskanian, 74 Mass. App. Ct. 666, 672 (2009).
Several years ago, Judge Wilkins construed the identical Brownfields tax credit under G.L. c. 62 as making the LSP’s determination of what remediation efforts were necessary binding upon the Commissioner, and providing that the MassDEP filings regarding c. 21E cleanup efforts shall “fix the activities for which expenditures qualify for the tax deduction.” Abodez Acord CW LLC v. Commissioner of Revenue, Suffolk Super. Ct. civil action no. 2016-1238-H, slip op. at 8 (Nov. 20, 2017). Judge Wilkins ruled that the Commission may not “usurp the LSP’s role by considering matters peculiarly within the LSP’s expertise – and distinctly outside the Commissioner’s expertise – concerning the scope of activities that were required from Brownfield’s redevelopment.” Id. at 8–9. He reasoned that “[t]he statute’s treatment of DEP’s and DOR’s respective roles strongly implies that the Commissioner has the power to adjust the amount of the request tax credit only for matters … within DOR’s traditional purview, including matters of accounting, documentation of costs, mistake, fraud, sham and the like.” Id. at 9. The Commissioner did not appeal from Judge Wilkins’ decision.
Boston Seaport contends that the Commissioner is bound by Judge Wilkins’ rulings under the doctrine of issue preclusion or collateral estoppel. It seeks a declaration that the Department of Revenue has no authority to disregarding
                                                            -4-
 
the LSP’s determination of what remediation activities, and therefore what net response and removal costs, were required to achieve a permanent cleanup solution. And it seeks a ruling that DOR committed reversible error by rejecting Boston Seaport’s tax credit application on the basis that some of its construction activities were not required to achieve a permanent solution, even though the LSP had determined that they were.
Boston Seaport also alleges that to date during the administrative appeal process DOR has produced a report from an LSP hired by DOR as a consultant, concluding that less contaminated soil needed to be removed from the Site to achieve a permanent solution than determined at the time by Boston Seaport’s LSP in its filings with MassDEP. Boston Seaport claims that under the statute this is an impermissible consideration and an unlawful basis for rejecting or reducing its Brownfields tax credit application.
This case “displays the characteristics that would justify a decision to excuse a litigant's failure  to  exhaust  administrative  remedies.”  Space  Bldg.  Corp., 413 Mass. at 448. The claims and issues raised by Boston Seaport in this case involve pure questions of law that can be resolved on the existing administrative record without any need for further fact finding or analysis by DOR. In addition, the legal basis for obtaining a Brownfields tax credit appears to a question of wide public significance that is likely to affect many taxpayers, “and it will arise repeatedly until resolved.” Id.
The Court will therefore exercise its discretion to permit Boston Seaport to press these claims based on the existing administrative record without waiting another six months or even far longer for DOR to conclude its administrative appeals process.
ORDER
Defendant’s motion to stay proceedings is denied. The Commissioner of Revenue shall file the then-current administrative record in this case no later than July 17, 2025. The parties shall confer about, and by noon on July 22, 2025, shall submit, a proposed schedule for the service and filing by the Plaintiff of a motion for judgment on the pleadings. The parties shall be prepared to discuss that proposal at the Rule 16 conference on July 24, 2025, at 2:00 p.m.
@/s/Kenneth W. Salinger
Justice of the Superior Court
@May 28, 2025